No. 66,374

JERRY S. DEAN and DANA D. DEAN, *et al.*, *Plaintiffs/Appellants,*
v. STATE OF KANSAS, *et al.*, *Defendants/Appellees/Cross-Appellants*. JAMES P. UNDERWOOD and ROMA UNDERWOOD, *et al.*, *Plaintiffs/Appellants,* v. STATE OF KANSAS, *et al.*, *Defendants/Appellees/Cross-Appellants*.

(826 P.2d 1372)

Opinion filed February 28, 1992.

*Kenton C. Granger*, of Niewald, Waldeck & Brown, P.C., of Kansas City, Missouri, argued the cause, and *Lisa A. Dunbar*, of the same firm, *Raymond L. Dahlberg*, of Overland Park, and *John Frieden* and *Kevin M. Fowler*, of Frieden, Haynes & Forbes, of Topeka, were with him on the briefs for appellants.

*William E. Waters*, of the Kansas Department of Revenue, argued the cause and was on the brief for appellee Kansas Department of Revenue.

*LeeAnne Hays Gillaspie*, of the Johnson County Legal Department, argued the cause and was on the brief for appellee Johnson County Treasurer.

*Steven R. Wiechman*, of Topeka, argued the cause and was on the brief for appellees 62 county treasurers.

*Wm. Scott Hesse*, of Myers, Pottroff & Ball, of Manhattan, was on the brief for appellee Riley County Treasurer.

*John C. Roberts*, Assistant Sedgwick County Counselor, was on the briefs for appellee Sedgwick County Treasurer.

*Phillip A. Burdick*, Brown County attorney, was on the brief for appellee Brown County Treasurer.

*David C. VanParys*, Leavenworth County Counselor, was on the brief for appellee Leavenworth County Treasurer.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an appeal by the plaintiffs from the order of the district court dismissing consolidated civil actions for lack of subject matter jurisdiction based upon the plaintiffs' failure to exhaust administrative remedies. The defendants are the State of Kansas, the Department of Revenue, the Secretary of Revenue, the Director of Property Valuation, the County Treasurer of Johnson County, and the county treasurers of 76 additional counties. In the order of dismissal, the district court expressly found that plaintiffs' complaint was meritorious and that the 1989 county average tax rate should have been used in calculating motor vehicle taxes for 1990. Defendants cross-appeal from that part of the district court's order in which K.S.A. 79-5105 is interpreted.

Subpart (a) of K.S.A. 79-5105 sets forth the procedure for determining the value of motor vehicles; subparts (b) and (c) provide the method for determining the amount of tax to be charged on motor vehicles:

"(b) multiply the amount determined under (a) by 30% (which shall constitute the taxable value of the motor vehicle); and

"(c) multiply the taxable value of the motor vehicle produced under (b) above by the county average tax rate for the next preceding tax year."

Motor vehicle taxes were first collected under this tag and tax law, as the parties call it, in 1981. At that time the counties were instructed by the Secretary of Revenue to use county average tax rates from 1979 for their calculations of 1981 motor vehicle taxes. In each year since then, the county average tax rates from two years prior to the collecting year were certified to the counties for use in calculating motor vehicle taxes.

Plaintiffs contend that the county average tax rates for 1989, rather than 1988, should have been used to calculate motor vehicle taxes in 1990. They complain that, as a result of the 1988 rates being used, taxpayers in 77 counties paid more in motor vehicle taxes than they would have if the proper rate had been used. For example, the county average tax rate in Johnson County

for 1988 was .177583 and for 1989 was .106749. Plaintiffs assert that the overcharge in 1990 was more than $60 million, and that the number of affected taxpayers is between 1 and 1.5 million. The average overcharge, therefore, is approximately $50.

The county average tax rate is not shown on the motor vehicle statements, and it is not apparent from the statements whether the formula of K.S.A. 79-5105 has been followed. Plaintiffs Jerry Dean, Dana Dean, James Underwood, and Roma Underwood, among others, executed affidavits stating that, at the time they paid 1990 motor vehicle taxes, they were unaware of any overcharge and did not become aware of any overcharge until it was suggested to them by someone else.

K.S.A. 1991 Supp. 79-2005 and K.S.A. 1991 Supp. 74-2426 set out the administrative procedure for protesting the payment of taxes and for recovery of protested taxes. It is uncontroverted that plaintiffs did not follow the procedure. It also is uncontroverted that the time in which the plaintiffs could have followed the procedure for protesting 1990 motor vehicle taxes has expired.

Plaintiffs in the *Underwood* case initially filed in this court an original class action in mandamus on behalf of all motor vehicle taxpayers in the 77 defendant counties. This court dismissed the action on December 7, 1990, under Supreme Court Rule 9.01(a) (1991 Kan. Ct. R. Annot. 41), stating that adequate relief appears to be available in the district court.

A few days after this court's dismissal, the *Underwood* case was filed in Johnson County District Court as a class action on behalf of motor vehicle taxpayers in 77 counties, including Johnson County. The *Dean* case was also filed in Johnson County, and the cases were consolidated; neither class was certified. The class defendants in the *Underwood* case included the county treasurers of the 77 counties.

The single underlying issue in this case is whether taxing authorities acted contrary to K.S.A. 79-5105 in calendar year 1990 by taxing motor vehicles based on the 1988 county average tax rate rather than the 1989 county average tax rate. The issue in this appeal is whether the district court lacked subject matter jurisdiction on the ground that plaintiffs had failed to exhaust administrative remedies. The administrative procedure for a taxpayer's protesting the collection of allegedly unlawful taxes has

as its first step, at the time of paying the taxes, the filing of a written statement with the county treasurer stating the grounds for protest. K.S.A. 1991 Supp. 79-2005(c) provides: "If the grounds of such protest shall be that any tax levy, or any part thereof, is illegal, such statement shall further state the exact portion of such tax which is being protested." The county appraiser must consider the taxpayer's grievance, and the taxpayer may appeal an unsatisfactory result to the State Board of Tax Appeals (BOTA).

K.S.A. 1991 Supp. 74-2426(c)(4) provides that any action of BOTA may be reviewed by the district court of the county in which the property is located. "The parties to the action for judicial review shall be the same parties as appeared before the board in the administrative proceedings before the board." K.S.A. 1991 Supp. 74-2426(c)(1). Review must be "in accordance with the act for judicial review and civil' enforcement of agency actions," K.S.A. 77-601 *et seq.* K.S.A. 1991 Supp. 74-2426(c).

K.S.A. 77-612 provides, in pertinent part, as follows: "A person may file a petition for judicial review under this act only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review." This court has stated the rule in less rigid terms: "The well-recognized rule in this state is that where a full and *adequate* administrative remedy is provided in tax matters by statute, such remedy must *ordinarily* be exhausted before a litigant may resort to the courts." (Emphasis added.) *State ex rel. Smith v. Miller,* 239 Kan. 187, Syl. ¶ 1, 718 P.2d 1298 (1986).

There is no claim by plaintiffs that they exhausted, or even initiated, the administrative remedies. They contend, however, that in the circumstances of this case, it was not necessary for them to do so. They argue that for numerous reasons the administrative remedies in this case are not "full and adequate" or "clear and certain."

Plaintiffs' first reason is that the controlling issue is "purely judicial" in nature and no benefit is gained by deferring the matter to the Department of Revenue or BOTA. The purpose to be served by requiring exhaustion of administrative remedies and the relative functions of the administrative agency and the ju-

diciary were stated by this court in *Jenkins v. Newman Memorial County Hospital*, 212 Kan. 92, 95, 510 P.2d 132 (1973):

"The doctrine of exhaustion of administrative remedies is directed toward promoting proper relationships between the courts and administrative agencies charged with particular administrative and regulatory duties. It promotes orderly procedure and requires a party to exhaust the administrative sifting process with respect to matters peculiarly within the competence of the agency."

In the realm of taxes, matters of assessment, exemption, equalization, and valuation are administrative in character. See *Symns v. Graves*, 65 Kan. 628, 636, 70 Pac. 591 (1902). Under Kansas law, it would be unwarranted for a court to entertain a tax suit on any of these matters of administrative expertise where administrative remedies had not been pursued.

Most of the cases relied upon by defendants for the proposition that exhaustion of administrative remedies is a condition precedent to filing suit in the district court involve challenges to administrative matters. For example, *Tri-County Public Airport Authority v. Board of Morris County Comm'rs*, 233 Kan. 960, 666 P.2d 698 (1983), was an action requesting an exemption from the payment of ad valorem property taxes assessed against property owned by the Airport Authority but rented to private citizens for various private uses. The plaintiff's claim that its property should enjoy tax-exempt status fell within the administrative agency's sphere of expertise, and the district court was without jurisdiction.

Another case cited by defendants is *State ex rel. Smith*, 239 Kan. 187. In affirming the district court's dismissal, this court observed: "Although appellant asserts the unconstitutionality of the statutes and seeks extraordinary relief, its obvious complaint is that the assessed valuation of its real property is too high. *This is an issue that must be determined by exhaustion of administrative remedies before resorting to the courts.*" (Emphasis added.) 239 Kan. at 190.

*Board of Osage County Comm'rs v. Schmidt*, 12 Kan. App. 2d 812, 758 P.2d 254, *rev. denied* 243 Kan. 777 (1988), also revolves around the assessment of real property. In a foreclosure action, the Schmidts raised as defenses that their property was assessed at a rate greater than other property in the county and

that the appraisal was not based on fair market value. Having failed to bring these administrative matters to the attention of the administrative agency, the Schmidts were prohibited from raising them as defenses in the foreclosure action.

There are other matters which are judicial rather than administrative in character. Construction or interpretation of statutory language is a judicial function. *State ex rel. Stephan v. Kansas Racing Comm'n,* 246 Kan. 708, 719, 792 P.2d 971 (1990). In these matters, the expertise lies with the court rather than the agency. It does not follow, however, that the agency or BOTA is precluded from interpreting a statute. Interpretation of a statute is a necessary and inherent function of an agency in its administration or application of that statute. In *Kansas Racing Comm'n,* this court said:

> "Usually, the legal interpretation of a statute by an administrative board or agency that is charged by the legislature with the authority to enforce the statute is entitled to great judicial deference. Ordinarily, the court will give deference to the agency's interpretation of the law, but, when reviewing questions of law, the trial court may substitute its judgment for that of the agency. *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA,* 233 Kan. 801, 809, 667 P.2d 306 (1983). In *Kansas Ass'n of Public Employees v. Public Employees Relations Bd.,* 13 Kan. App. 2d 657, 659, 778 P.2d 377 (1989), the Court of Appeals recently held that an agency's interpretation of a challenged statute may be entitled to '*controlling significance* in judicial proceedings' (citing *Pittsburg State,* 233 Kan. at 809).

> "This court has recognized that, when a statute is ambiguous, the interpretation placed upon it by an administrative agency whose duties are to carry the legislative policy into effect should be given great weight and may be entitled to controlling significance when the scope and limitations of the powers of the agency must be determined in judicial proceedings. *Cities Service Gas Co. v. State Corporation Commission,* 192 Kan. 707, 714, 391 P.2d 74 (1964); *Southwestern Bell Telephone Co. v. Employment Security Board of Review,* 189 Kan. 600, 607, 371 P.2d 134 (1962)." 246 Kan. at 719-20.

The interpretation of the statute in the present case by the Secretary of Revenue was a necessary administrative act in implementing K.S.A. 79-5105. That interpretation, however, is subject to review as a question of law by the courts. Hence, if the protesting taxpayer exhausts the administrative procedures and raises all issues, including those of statutory construction, at the administrative level, the district court on review is authorized to

reconsider and redetermine the construction of that statute. "The district court has authority to construe a statute at variance with BOTA" without "interfer[ing] with the administrative agency's expertise in taxation matters." *In re Order of Board of Tax Appeals*, 236 Kan. 406, 410, 691 P.2d 394 (1984).

Plaintiffs also argue that it is a well-established principle that the exhaustion of state administrative remedies is not required before an action in state court under 42 U.S.C. § 1983 (1988) may be commenced. They cite *Felder v. Casey*, 487 U.S. 131, 101 L. Ed. 2d 123, 108 S. Ct. 2302 (1988); *Patsy v. Florida Board of Regents*, 457 U.S. 496, 73 L. Ed. 2d 172, 102 S. Ct. 2557 (1982); and *Monroe v. Pape*, 365 U.S. 167, 5 L. Ed. 2d 492, 81 S. Ct. 473 (1961).

Plaintiffs attack the administrative procedure set out in 79-2005 and 74-2426 as being inadequate because it does not provide for class-wide relief. Plaintiffs argue that, because of this inadequacy in the administrative remedy, it does not meet the due process requirements of the federal Constitution. An action in the district court where there is a mechanism for processing a class action does pass constitutional muster. Thus, plaintiffs argue, because the only constitutionally adequate remedy available to plaintiffs lies in the district court, there can be no jurisdictional requirement that they exhaust administrative remedies as a prerequisite to maintaining their class action in the district court.

Defendants respond that post-deprivation tax appeal procedures, such as provided by 79-2005, are constitutional where they provide a "clear and certain remedy." *McKesson Corp. v. Florida Alcohol & Tobacco Div.*, 496 U.S. 18, 51, 110 L. Ed. 2d 17, 110 S. Ct. 2238 (1990). Defendants cite *Coleman v. McLaren*, 631 F. Supp. 749, 762 (N.D. Ill. 1985), for the proposition that the lack of class action administrative procedures does not render the administrative remedy inadequate.

Defendants further respond that *Fair Assessment in Real Estate Assn. v. McNary*, 454 U.S. 100, 70 L. Ed. 2d 271, 102 S.Ct. 177 (1981), establishes a different rule for state tax cases. *McNary* involved the extension of the prohibition of the Tax Injunction Act to a federal court action seeking damages under § 1983 for a state tax problem. Justice Brennan, in his concurring opinion, spells out his views of federal/state comity. He stated his concern

with the special reasons for the policy of federal noninterference with state taxation and quoted from an earlier opinion setting out the considerations which have led to restraint:

" 'The special reasons justifying the policy of federal noninterference with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsibilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency.' " 454 U.S. at 137 n.27 (Brennan, J., concurring) (quoting *Perez v. Ledesma*, 401 U.S. 82, 128 n.17, 27 L. Ed. 2d 701, 91 S. Ct. 674 [1971] [Brennan, J., concurring and dissenting]).

His concern leads to the conclusion that "[w]here administrative remedies are a precondition to suit for monetary relief in state court, absent some substantial consideration compelling a contrary result in a particular case, those remedies should be deemed a precondition to suit in federal court as well." 454 U.S. at 137.

Plaintiffs cite *Hogan v. Musolf*, 157 Wis. 2d 362, 459 N.W.2d 865 (1990), which rejects the above reasoning and refuses to "read *McNary* as creating any limitation on sec. 1983 actions in state courts." 157 Wis. 2d at 375 n.9. Defendants cite cases from other states which support Justice Brennan's concern as expressed in *McNary*. See *Owner-Operators Independent Drivers Assn. of America v. State*, 209 Conn. 679, 553 A.2d 1104 (1989); *Raschke v. Blancher*, 141 Ill. App. 3d 813, 491 N.E.2d 1171 (1986); *Stufflebaum v. Panethiere*, 691 S.W.2d 271 (Mo. 1985); and *Johnston v. Gaston County*, 71 N.C. App. 707, 323 S.E.2d 381 (1984), *rev. denied* 313 N.C. 508 (1985).

We find the rationales of the cases cited by defendants persuasive. The considerations that have prompted federal court restraint in matters of state taxation also should prompt restraint where a federal cause of action is brought in state court challenging matters of state taxation. At minimum, the federal cause

of action should not create the necessity for the state court to forego restraint in such matters.

*Coleman*, 631 F. Supp. 749, is authority for the proposition that the absence of class-wide remedies does not necessarily mean that the administrative remedy is inadequate. It does not preclude, however, a determination that the absence of a class mechanism in some circumstances may constitute inadequacy.

In *Coleman*, a class action under § 1983 was dismissed for lack of subject matter jurisdiction pursuant to the Tax Injunction Act, 28 U.S.C. § 1341 (1988), which prohibits federal courts dealing with state tax complaints from ordering injunctive relief where state law provides a plain, speedy, and efficient remedy in state court. *McNary*, 454 U.S. 100, extends the prohibition of the injunction statute to federal courts granting damages under § 1983 in state tax cases.

The principal issue for a federal court applying the Tax Injunction Act is federal/state comity, and the general inclination of federal courts to step gingerly in this area is reflected in the overwhelming majority of these cases resulting in deferral to the state tribunals.

In the present case, plaintiffs challenge the interpretation placed on K.S.A. 79-5105 by the Secretary of Revenue. Based upon that challenge, plaintiffs are seeking the recovery of taxes through various state remedies and pursuant to 42 U.S.C. § 1983.

In *Felten Truck Line v. State Board of Tax Appeals*, 183 Kan. 287, 327 P.2d 836 (1958), this court considered a challenge to the constitutionality of the motor carrier tax statute as well as the interpretation and administration of the Motor Carrier Act by the state commission of revenue and taxation. This court made a distinction between a challenge to the commission's acts in implementing the statute and a challenge to the statute itself. One of the arguments raised by defendants was that "plaintiffs had an adequate remedy at law by way of administrative proceedings under G.S. 1949, 79-1702." 183 Kan. at 293. This court said:

"Insofar as the plaintiffs complain of the commission's valuation of their property and other acts of the commission in its application of the statute, the commission's position is well taken. The commission should not be subjected to litigation in the courts until the alleged error has been called

to its attention and it has had an opportunity to consider and correct the grievance. (*Gray v. Jenkins*, 183 Kan. 251, 326 P.2d 319.)" 183 Kan. at 293.

In the present case, plaintiffs' class action petition filed in the district court states that "[t]his action seeks the refund of over-charges and constitutionally unlawful takings by the defendants during calendar year 1990." The purpose of plaintiffs' action is the recovery of the motor vehicle taxes paid as a result of the Department of Revenue's application of K.S.A. 79-5105. Clearly, plaintiffs are seeking tax relief, and that is the sole objective of their various claims against the defendants. In *Tri-County*, 233 Kan. 960, this court, in noting that K.S.A. 1980 Supp. 79-2005 was part of the 1980 reforms in the tax procedure, said:

"The 1980 reforms in tax procedure are contained primarily in three statutes. The first is K.S.A. 1980 Supp. 79-2005 which was effective July 1, 1980. The former language in that section, which permitted an aggrieved taxpayer to pay his taxes under protest and then file an action within thirty days in a court of competent jurisdiction, was eliminated. *His sole remedy is now to file an application for refund within the thirty-day period with BOTA. This statutory change achieved the legislative objective of eliminating direct action in the district court, thus channeling all tax matters through BOTA, the paramount taxing authority in the state. Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 492 P.2d 147 (1971), *cert. denied* 406 U.S. 967 (1972)." (Emphasis added.) 233 Kan. at 964.

In *State ex rel. Smith*, 239 Kan. 187, the plaintiff argued that it had no adequate administrative remedy because BOTA had no authority to rule upon the constitutionality of the tax statutes or provide the relief sought by way of mandamus and quo warranto. This court did not agree. In affirming the district court's dismissal, this court observed:

"A party aggrieved by an administrative ruling is not free to pick and choose a procedure in an action in the district court in order to avoid the necessity of pursuing his remedy through administrative channels. Since the adoption of the act for judicial review and civil enforcement of agency actions (K.S.A. 77-601 *et seq.*), it would appear that relief such as sought here should be raised as new issues in the district court on appeal from the BOTA. See K.S.A. 77-617.

". . . It appears clear that appellant was not concerned with the consti-tutionality of the various statutes so long as the tax increases were limited to individual lot owners and appellant was the recipient of preferential tax assessment.

"It is obvious appellant is seeking tax relief without first exhausting the administrative remedies available and which might result in the relief sought. If unsuccessful at the administrative level of the BOTA, appellant will then have the right of appeal to the district court." 239 Kan. at 190-91.

Here, the plaintiffs' claim for recovery of the motor vehicle registration tax is an attempt to seek tax relief without first complying with K.S.A. 1991 Supp. 79-2005. K.S.A. 1991 Supp. 79-2005 and K.S.A. 1991 Supp. 74-2426 provide the plaintiffs with a clear and certain remedy for complete and adequate relief and, therefore, must be complied with before resorting to the courts. The district court properly dismissed the plaintiffs' claims for the recovery of taxes for lack of subject matter jurisdiction.

However, the district court does have original jurisdiction to hear claims for declaratory judgment and injunctive relief without plaintiffs' first complying with K.S.A. 1991 Supp. 79-2005 and K.S.A. 1991 Supp. 74-2426. The plaintiffs' claim for declaratory judgment seeks an order of the district court declaring that "the provisions of K.S.A. 79-5105 have been violated by the defendants . . . by the utilization of the 1988 county average tax rate of .17758 instead of the 1989 county average tax rate of .10675 in the taxation of motor vehicles registered in Johnson County in 1990." This is a claim brought pursuant to K.S.A. 60-1701 and, if considered separately from the claims for recovery of taxes paid, would not be subject to the requirement of exhaustion of administrative remedies. However, as previously noted, the stated purpose of plaintiffs' case is to recover the motor vehicle registration taxes paid for 1990. All of these various claims are directed toward accomplishing that purpose. The plaintiffs do not separate out their claims for declaratory judgment or injunctive relief or argue these claims should be considered independent of the other claims. Even if treated separately, these claims are limited to the defendants' application of the statute in 1990; therefore, there is nothing to enjoin, and since plaintiffs have failed to comply with K.S.A. 1991 Supp. 79-2005, any determination would be unavailing and have no practical effect as to the real issue presented, which is the recovery of the taxes paid. Therefore, plaintiffs' claims for declaratory judgment and injunctive relief are moot and subject to dismissal for that reason if not for lack of subject matter jurisdiction. In any event, since these claims

are moot, they will not be decided on appeal. *State ex rel. Stephan v. Johnson*, 248 Kan. 286, 807 P.2d 664 (1991). The ruling of the district court dismissing all of plaintiffs' claims was correct.

In light of our decision, we need not consider the defendants' cross-appeal.

The judgment of the district court is affirmed.