No. 67,641

FIRST PAGE, INC., *Appellant,* v. DAVID C. CUNNINGHAM, *et al.,*
*Appellees.*

(847 P.2d 1238)

Opinion
filed March 5, 1993.

*David P. Troup,* of Weary, Davis, Henry, Struebing & Troup, of Junction City, argued the cause and was on the brief for appellant.

*William E. Waters,* of the Kansas Department of Revenue, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is an action by First Page, Inc., (First Page) against the State Director of Property Valuation and the taxing authorities in each of 15 counties in which First Page owns property (hereafter defendants will be referred to as Director), seeking injunctive and declaratory relief and a writ of mandamus. These cases were consolidated and transferred for determination in Shawnee County. The district court granted the defendants' motions to dismiss for failure to exhaust administrative remedies.

The district court also ruled that First Page is a public utility for property tax purposes. First Page appealed and filed a motion to transfer to this court, which was granted pursuant to K.S.A. 20-3017.

The relevant facts are not in dispute. First Page was formed in the fall of 1989 by acquiring the paging operations of two other companies. It operates as a radio common carrier, offering one-way paging services transmitted by radio frequency.

In early 1990, First Page submitted commercial personal property statements to the county appraisers in Kansas counties where it owns property. The statements were not accepted on the ground that the Director considered First Page to be a public utility.

In August 1990, the Director sent to First Page's tax consultant its 1990 Notice of Value Indicators, Correlated Value, Allocation Factor & Assessed Value in Kansas. In November 1990, First Page received tax bills from the 15 Kansas counties in which it owns property.

In each of the 15 counties, First Page sued the Director, the Board of County Commissioners, and the County Treasurer. First Page sought an injunction pursuant to K.S.A. 60-907(a) against the assessment, a declaratory judgment pursuant to K.S.A. 60-1701 et seq. that First Page is not a public utility for property tax purposes, an injunction to prevent future assessment, and a writ of mandamus directing county officials to recompute First Page's tax liability. This court ordered the actions to be consolidated and transferred to Shawnee County for determination.

In February 1991, the Director filed a motion to dismiss for failure to exhaust administrative remedies. It was joined by most county defendants. The district court had not ruled on the motion to dismiss when the parties filed cross-motions for summary judgment in July and August 1991.

The district court ruled that First Page was required to exhaust its administrative remedies before initiating this action, that it had failed to do so, and that, as a result, this action would be dismissed. In addition, the district court ruled that First Page is a public utility for property tax purposes.

The district court's journal entry contains the following pertinent paragraphs:

"Thereupon the Court hears arguments of counsel, reviews the record herein, and being duly advised in the premises finds defendants' motions to dismiss plaintiff's petitions pursuant to K.S.A. 60-212(b)(1) for lack of subject matter jurisdiction should be and are hereby sustained for the reasons stated on the record in open court.

"Notwithstanding the above, however, the Court further finds that radio common carriers are public utilities as defined in K.S.A. 79-5a01 and subject to valuation and assessment pursuant to K.S.A. 79-5a01 *et seq.* for the reason that they are engaged in the business of transmitting telephonic or telegraphic messages to, from, through or in this state."

The first issue First Page raises is whether the district court correctly dismissed its action for failure to exhaust administrative remedies. The Director concedes that First Page's claims for declaratory and injunctive relief should not have been dismissed by the district court. The parties agree that *Dean v. State*, 250 Kan. 417, 826 P.2d 1372 (1992), and *Zarda v. State*, 250 Kan. 364, 826 P.2d 1365 (1992), control. Those opinions were filed on February 28, 1992, a little more than a month after the journal entry was filed in the present case.

Since the Director concedes that dismissal by the district court was error, the question becomes whether we should consider plaintiff's second issue of whether First Page is a public utility for property tax purposes. That determination is the key to this case. Both First Page and the Director advocate that this court should decide the issue even though the district court dismissed First Page's petition for lack of subject matter jurisdiction.

First Page simply argues that there is no reason to remand this case to the district court for a determination on the merits because the district court already expressed its opinion on the matter. The Director argues that, "[a]s a practical matter, the district court granted appellee's motion for summary judgment." The ground for the Director's motion for summary judgment was that his assessment against First Page was correct because radio common carriers offering one-way paging services transmitted by radio frequency are public utilities as defined for tax purposes by K.S.A. 79-5a01. The Director also argues that the issue should be resolved by this court because it is a question of law, and, if the case were remanded for its determination by the district court, it would be given de novo review on a second appeal of this case.

We agree with the Director's contention. The disposition of this case turns on the interpretation of K.S.A. 79-5a01, which defines public utility for property tax purposes. The interpretation of a statute is a question of law and is subject to unlimited appellate review. *Steele v. City of Wichita*, 250 Kan. 524, 527, 826 P.2d 1380 (1992). The district court has stated its reasons as well as its conclusion on the record. Moreover, the Director now concedes that the district court did have jurisdiction to decide the merits of the action.

First Page contends that it is not a public utility within the meaning of K.S.A. 79-5a01 and that the tax on its commercial personal property should be assessed and calculated pursuant to Art. 11, § 1 of the Kansas Constitution and K.S.A. 79-1439(b)(2)(E). First Page asserts that "[m]ost commercial personal property" is assessed and calculated pursuant to those provisions. First Page asserts: (1) Its property should "be valued by applying straight-line depreciation to original cost over a period not to exceed seven years and down to a residual value of not less than 20% of original cost"; (2) the local county appraiser should then apply a 20% assessment rate to the depreciated value to determine the assessed value to which the local mill levy is applied; and (3) there is little discretion to be exercised by the appraiser, and the Director, who is a state official, has no direct involvement.

The Director contends that the tax on First Page's commercial personal property should not be calculated by the typical method described above because First Page is a public utility within the meaning of K.S.A. 79-5a01. Public utility property is assessed by the Director pursuant to K.S.A. 79-5a04. The Director has some latitude in his valuation. The assessment rate is 30%, as contrasted with 20% for other commercial personal property.

Thus, the central issue is whether First Page is a public utility within the meaning of K.S.A. 79-5a01. The statute provides:

"(a) As used in this act, the terms *'public utility' or 'public utilities' shall mean every* individual, *company,* corporation, association of persons, lessees or receivers *that* now or hereafter are in control, manage or *operate a business of:*

(1) A railroad or railroad corporation if such railroad or railroad corporation owns or holds, by deed or other instrument, an interest in right-of-way, track, franchise, roadbed or trackage in this state

(2) transmitting to, from, through or in this state telegraphic messages

(3) *transmitting to, from, through or in this state telephonic messages*

(4) transporting or distributing to, from, through or in this state natural gas, oil or other commodities in pipes or pipelines, or engaging primarily in the business of storing natural gas in an underground formation

(5) generating, conducting or distributing to, from, through or in this state electric power

(6) transmitting to, from, through or in this state water if for profit or subject to regulation of the state corporation commission

(7) transporting to, from, through or in this state cargo or passengers by means of any vessel or boat used in navigating any of the navigable watercourses within or bordering upon this state.

"(b) The terms 'public utility' or 'public utilities' shall not include: (1) Rural water districts established under the laws of the state of Kansas; or (2) any individual, company, corporation, association of persons, lessee or receiver owning or operating an oil or natural gas production gathering line which is situated within one county in this state and does not cross any state boundary line; or (3) any individual, company, corporation, association of persons, lessee or receiver owning any vessel or boat operated upon the surface of any man-made waterway located entirely within one county in the state." (Emphasis supplied.)

The district court reasoned that radio common carriers fall within subsection (a)(3) as "transmitting to, from, through or in this state telephonic messages." Because there is no definition of "telephonic message" in Chapter 79, the district court looked to the definition in "the chapter devoted to public utilities." K.S.A. 66-104 provides in pertinent part: "As used herein, the term 'transmission of telephone messages' shall include the transmission by wire or other means of any voice, data, signals or facsimile communications, including all such communications now in existence or as may be developed in the future." The district court concluded that the definition is broad enough to encompass one-way radio paging.

The district court concluded that the Chapter 66 definition of public utility should be applied to the tax question because it "is the only legislative guidance on the matter." If the legislature had intended the term to have a different meaning in Chapter 79, the court's reasoning continued, a definition would have been provided there.

Although radio common carriers are "virtually unregulated" by the Kansas Corporation Commission (KCC), which regulates public utilities, the district court was further persuaded by legislative

history that the intention was to include them as public utilities for property tax purposes.

The district court explained the 1986 amendment to 79-5a01 as follows:

"In 1986, the Kansas Legislature amended K.S.A. 79-5a01 to assure the continued State assessment of radio common carriers. The 1986 amendment removed from K.S.A. 79-5a01 a provision which formerly made regulation by the State Corporation Commission or the Federal Communications Commission a prerequisite to State assessment of certain sellers or lessors of telephonic equipment, products, or services. The bill in that year, House Bill No. 3013, was requested by the Property Valuation Division of the Kansas Department of Revenue."

The district court cited the Director's testimony to the House Committee on Assessment and Taxation as establishing that the provision which he sought to have removed from 79-5a01 originally had been inserted at the request of Southwestern Bell. Its original purpose was to exclude Southwestern Bell's telephone stores from State assessment. The telephone stores were a non-regulated aspect of the public utility.

The district court quoted the following testimony of the Director:

" '[F]ailure to repeal the language in question may allow others to now successfully argue against State assessment even though this was not the original intent of the law. Deregulation of long distance carriers and radio common carriers in recent years might allow these companies to now argue that they meet the requirements of the statutory exception.

"These companies are presently State assessed and we believe they should continue to be.' "

Simply stated, the district court concluded that, when radio common carriers were deregulated in 1986, 79-5a01 was amended to delete the requirement of regulation for State assessment of a public utility. Thus, the amendment permitted the State to continue its assessment of radio common carriers.

First Page concedes that it "is engaged in the business of 'transmission of telephone messages' as defined in K.S.A. 66-104." It contends, however, that the definition is inapplicable for the purpose of applying 79-5a01.

K.S.A. 66-104 states in pertinent part:

"The term 'public utility,' as used in this act, shall be construed to mean every corporation, company, individual, association of persons, their trustees,

lessees or receivers, that now or hereafter may own, control, operate or manage, except for private use, any equipment, plant or generating machinery, or any part thereof, for the transmission of telephone messages or for the transmission of telegraph messages in or through any part of the state . . . . As used herein, the term 'transmission of telephone messages' shall include the transmission by wire or other means of any voice, data, signals or facsimile communications, including all such communications now in existence or as may be developed in the future."

By enactment of K.S.A. 66-1,143, the legislature removed radio common carriers from among those utilities which are subject to supervision by the KCC. Radio common carriers are defined in K.S.A. 66-1,143 to

"include all persons and associations of persons, whether incorporated or not, operating a public 'for hire' radio service engaged in the business of providing a service of radio communication, including cellular radio, which is one-way, two-way or multiple, between mobile and base stations, between mobile and land stations, including land line telephones, between mobile stations or between land stations, but not engaged in the business of providing a public land line message telephone service or a public message telegraph service within this state."

K.S.A. 66-1,143 distinguishes the transmission of signals by radio common carriers from transmission by telephone public utilities and deregulates the former.

As to whether the K.S.A. 66-104 definition of transmission of telephone messages transfers to 79-5a01, the Director concedes nothing directly, but states that the "district court conceded that this definition was applicable to proceedings before the Kansas Corporation Commission and not applicable to proceedings pursuant [to] K.S.A. 79-5a01." Nonetheless, the Director contends that a word or phrase which appears in different statutory sections should be consistently defined unless a contrary intention is apparent. He relies on federal case law in support of the principle. We do not find support for the Director's contention in these cases.

The first case cited by the Director is *In re Hartman*, 110 Bankr. 951 (D. Kan. 1990). There, the court considered the meaning of a word used in different sections of the same "body of law," the Bankruptcy Code. The court stated that such a word generally should be given the same meaning in each section. It cited *Barnson v. U.S.*, 816 F.2d 549 (10th Cir.), *cert. denied* 484

U.S. 896 (1987), the other case relied on by the Director. 110 Bankr. at 955.

In *Barnson,* the court was concerned with terms used in different sections of the Atomic Energy Act, 42 U.S.C. §§ 2011-2296 (1982). The court stated that they should be given the same meaning. 816 F.2d at 554. It cited *Firestone v. Howerton,* 671 F.2d 317 (9th Cir. 1982), which involved the interpretation of different sections of the Immigration and Nationality Act, 8 U.S.C. §§ 1259 and 1182 (1982).

These federal cases do not stand for the proposition advocated by the Director. They stand for giving consistent meaning to a term used in different sections of the same legislative package. If applied to the Kansas statutes, the principle would require giving the phrase "transmission of telephone messages" the same definition no matter where it occurred within Chapter 66. It does not require that the term be given the same definition in Chapter 79—Taxation—as it is given in Chapter 66—Public Utilities.

We conclude that the all-embracing 66-104 definition of "transmission of telephone messages" should not be read into 79-5a01. In the matter of construing tax statutes, this court has stated:

> "Tax statutes will not be extended by implication beyond the clear import of language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced. Where there is reasonable doubt as to the meaning of a taxing act, it will be construed most favorable to the taxpayer." *Equitable Life Assurance Society v. Hobbs,* 154 Kan. 1, Syl. ¶ 1, 114 P.2d 871 (1941).

K.S.A. 66-104 and 79-5a01 both serve the primary purpose of defining "public utility," the former for establishing the KCC's scope of regulatory authority and the latter for establishing the Director's scope of assessment authority. No one is suggesting that the 66-104 definition of public utility should be read into 79-5a01. Why then should the definition of "transmission of telephone messages," which is a subpart of the 66-104 definition of public utility, be read into the 79-5a01 use of "transmitting . . . telephonic messages"? The public utility definitions of 66-104 and 79-5a01 diverge significantly from one another. The legislature drew them up separately and set them out separately to serve their independent purposes. Nothing indicates that the legislature intended that a subpart of one, which does not appear

in the other, should have any application to the latter. It would have been a simple matter for the legislature to have done so if that were its intent.

With regard to statutory construction, this court has stated:

"Interpretation of a statute is a question of law, and it is a function of this court to interpret a statute to give it the effect intended by the legislature. The fundamental rule of statutory construction, to which all others are subordinate, is that the intent of the legislature governs. In determining legislative intent, we are not limited to consideration of the language used in the statute, but may look at the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested." *Cyr v. Cyr*, 249 Kan. 94, Syl. ¶ 2, 815 P.2d 97 (1991).

"The fundamental rule of statutory construction is that the intent of the legislature governs. When construing a statute, a court should give words in common usage their natural and ordinary meaning." *Bank IV Wichita v. Plein*, 250 Kan. 701, Syl. ¶ 1, 830 P.2d 29 (1992). In this regard, First Page states: "We do not believe that a one-way radio paging service constitutes the transmission of a 'telephone message' in common usage, any more than the average individual would believe radio or television broadcasting constitutes transmission of a telephone message."

First Page further urges that taxing statutes must be strictly construed so as to be applied to a taxpayer only where expressly applicable. See *Equitable Life Assurance Society v. Hobbs*, 154 Kan. at 12.

First Page poses this rhetorical question:

"If . . . one-way paging companies are public utilities for taxation purposes under K.S.A. 79-5a01 because they transmit telephone messages as defined in K.S.A. 66-104, notwithstanding the fact that they are otherwise not regulated and are not telephone companies, can the Director explain why the same would not be true of commercial radio stations and television broadcasters or cable television companies or newspaper publishers?"

Simply stated, First Page contends that the paging company is in the business of transmitting messages *about* telephone communications. That business is separate and distinct from the business of providing the means for actual telephone communications. The paging company transmits a message to its subscriber that someone wants to be in telephonic communication with the subscriber. It is the telephone company, not the paging company,

which makes it possible for the subscriber to have actual telephone communication.

In support of its contention, First Page cites cases involving the question whether a paging company is a public utility for regulatory purposes. First Page cites in particular the following: *Zachs v. Groppo*, 207 Conn. 683, 542 A.2d 1145 (1988); *Illinois Cons. Telephone Co. v. Ill. Commerce Com.*, 95 Ill. 2d 142, 447 N.E.2d 295 (1983); and *Radio Relay Corp. v. Pub. Util. Comm.*, 45 Ohio St. 2d 121, 341 N.E.2d 826 (1976).

The issue in the Connecticut case involved taxation. The principal issue was whether a one-way radio paging company was a "telephone answering service" so as to be subject to the state sales and use tax. The court also was called on to consider whether the one-way radio paging company was in the business of transmitting telephone messages. Citing the Illinois and Ohio cases discussed below, the Connecticut court concluded that the relay of a caller's signal by the one-way paging service was not transmission of a telephone message. *Zachs v. Groppo*, 207 Conn. at 697 n.16.

The first issue before the Illinois Supreme Court was whether the activity of a one-way radio paging company falls within this provision of the state's Public Utilities Act:

"'"Public utility" means and includes every corporation, company, association, joint stock company or association, firm, partnership or individual, their lessees, trustees, or receivers appointed by any court whatsoever that owns, controls, operates or manages, within this State, directly or indirectly, for public use, any plant, equipment or property used or to be used for or in connection with, or owns or controls any franchise, license, permit or right to engage in: ·

. . . .

b. the transmission of telegraph or telephone messages between points within this State . . . .'" 95 Ill. 2d at 145-46 (quoting Ill. Rev. Stat. ch. 111²/₃, ¶ 10.3[b] [1979]).

The court concluded that the paging service at issue, "which consists only of one-way radio signaling, does not fall within the Public Utilities Act." 95 Ill. 2d at 147.

The following rationale, which was offered by the Illinois court, is relevant to the present case:

"We do not judge that because the radio signal is a result of a telephone call by a person seeking the subscriber, the radio-paging business operates

equipment used 'for or in connection with . . . the transmission of . . . telephone messages.' (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 10.3.) The paging service is but a recipient of a telephone call, and the service simply notifies its subscriber of the call. The Commission, having reconsidered and concluded that Aircall is not a public utility, argues that the paging company is in reality only an answering service with sophisticated equipment. (The only unique aspect of the service offered by paging businesses, the Commission argued in the appellate court, involves the use of radio signals, and the use of radio frequencies is licensed federally.) It may be that paging companies facilitate communication by telephone by signaling persons who are away from telephones, but the statute does not make every business that facilitates telephone communication a public utility. The Commission points out that the publishers of telephone classified directories, such as legal or medical directories, also facilitate telephone communication, but it could hardly be said that those publishers were intended by the legislature to be considered public utilities. Similarly it could be said that simple answering services aid and facilitate telephone communication. But it is obvious that the nature of the service is not a functional part of the transmission of messages by telephone, nor is radio paging." 95 Ill. 2d at 148-49.

The question before the Ohio Supreme Court was whether a one-way paging company was engaged in the business of transmitting telephone messages to, from, through, or in the state. The court stated:

"Where a one-way radio paging service broadcasts a radio signal from its own transmitter to a subscriber's pager, which the subscriber carries in his pocket, causing the pager to emit a beep which alerts the subscriber to make a telephone call, such signal is not a 'telephonic message' within the meaning of R.C. 4905.03(A)(2), even though the radio paging service is interconnected to a land-line telephone facility for the sole purpose of transmitting signalling instructions from the telephone company's automatic answering device to the radio paging service's transmitter."

"A company engaged in the business of providing such a one-way radio paging service to its subscribers is not a 'telephone company' within the meaning of R.C. 4905.03(A)(2), nor is it a 'public utility' within the meaning of R.C. 4595.02." *Radio Relay Corp. v. Pub. Util. Comm.*, 45 Ohio St. 2d 121, Syl. ¶¶ 1 and 2.

In the present case, the district court gave considerable weight to the legislative background, particularly the 1986 amendment to K.S.A. 79-5a01. The district court reasoned:

"The 1985 amendment to K.S.A. [66-1,143] had a pronounced impact on K.S.A. 79-5a01. Prior to 1986, 79-5a01 provided that the term public utility would not include any individual, company, or corporation which was en-

gaged in the business of selling or leasing telephonic equipment, products, or services, and which was not regulated by either the State Corporation Commission or the F.C.C. Thus, during 1986 and 1987, radio common carriers could not be taxed as public utilities because of the change in K.S.A. [66-1,143].

"In 1986, the Legislature *deleted the language* in 79-5a01(b), which had created a loophole for the radio common carriers. Thus, beginning in 1987, radio common carriers were again subject to the taxation provisions of K.S.A. 79-5a01."

The deleted language referred to by the district court was found in K.S.A. 79-5a01(b)(2) and (3) (Ensley 1984), which provided:

"The terms 'public utility' or 'public utilities' shall not include: . . . (2) any individual, company, corporation, association of person, lessee or receiver which is engaged in the business of selling or leasing telephonic equipment, products or services and (A) which is not regulated by either the state corporation commission or the federal communications commission as to the price of such equipment, products or services or (B) which does not offer telephone service to the public under tariffs approved by the state corporation commission or the federal communications commission, even if such individual, company, corporation, association of persons, lessee or receiver is a subsidiary of or affiliated with a public utility providing telephone service to the public; or (3) the nonregulated portion of a public utility's telephone service operation where that activity is conducted separately from its public utility telephone service operation or separate books and records or accounts are maintained for such nonregulated operation."

In addressing the House Committee on Assessment and Taxation in 1986, the Director referred to the origins of the above-quoted language:

"The language we are requesting you strike was originally added to the statute, at the request of Southwestern Bell, to exclude from state assessment the non-regulated activities of a utility and was aimed at excluding Bell's phone stores. Because of the restructuring of Bell, we believe such an exception is now unnecessary. Under the new structure of the company no argument could be made that these stores fall under the purview of state assessment."

Clearly, the intent of the Property Valuation Division of the Department of Revenue in requesting the 1986 amendment was to head off questions that the deregulation of radio common carriers would result in a change in its assessment practices. However, since the above language was not added for the purpose of excluding radio common carriers from state assessment as a public utility, it does not follow that by striking the language the

legislature intended to include radio common carriers within the meaning of the term "public utility." What is lacking is any showing that, prior to 1986, "transmitting . . . telephonic messages" was intended by the legislature to include radio common carriers. Absent such a showing, Article 5a, Chapter 79 of the Kansas Statutes Annotated is being "enlarged so as to include matters not specifically embraced." *Equitable Life Assurance Society v. Hobbs*, 154 Kan. 1, Syl. ¶ 1.

First Page has none of the trappings of a public utility. Its service is a convenience rather than an essential service. It is highly competitive rather than a monopoly. It does not make use of public property or rights-of-way and does not require a franchise or authority to operate. It is not guaranteed a rate of return on investments and cannot offset a tax increase by requesting a rate increase.

We find persuasive the rationales of the Connecticut, Illinois, and Ohio cases that the business of providing a one-way paging service does not constitute the transmission of telephone messages. Clearly, the natural and ordinary meaning of transmitting telephonic messages does not include one-way radio paging. We conclude that a company in the business of providing one-way radio paging service to its customers is not "transmitting to, from, through or in this state telephonic messages." We therefore hold that First Page is not a public utility within the meaning of K.S.A. 79-5a01.

Judgment of the district court is reversed.