The Honorable Keith Roe Chairman, House Committee on Taxation 225 W. Webster P.O. Box 364 Mankato, Kansas 66956-0364
Dear Representative Roe:
You request our opinion regarding the constitutionality of redefining the term "public utility," as used in article 11, section 1 of the Kansas constitution, to exclude certain long distance telephone companies so that they may be taxed at a lower rate. Essentially, your question is whether it would violate article 11, section 1 to alter the definition of "public utility" from what it was at the time the voters adopted that section of the constitution.
Article 11, section 1 provides in part:
 "(a) . . . Except as otherwise hereinafter specifically provided, the legislature shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation. . . .
 "Class 1 shall consist of real property. Real property shall be further classified into seven subclasses. Such property shall be defined by law for the purpose of subclassification and assessed uniformly as to subclass at the following percentages of value:
. . . .
 "(5) Public utility real property, except railroad real property which shall be assessed at the average rate that all other commercial and industrial property is assessed .................................. 33%
 "(6) Real property used for commercial and industrial purposes and buildings and other improvements located upon land devoted to agricultural use ........ 25%
. . . .
 "Class 2 shall consist of tangible personal property. Such tangible personal property shall be further classified into six subclasses, shall be defined by law for the purpose of subclassification and assessed uniformly as to subclass at the following percentages of value:
. . . .
 "(3) Public utility tangible personal property including inventories thereof, except railroad personal property including inventories thereof, which shall be assessed at the average rate all other commercial and industrial property is assessed ..................................... 30%
. . . .
 "(5) Commercial and industrial machinery and equipment which, if its economic life is seven years or more, shall be valued at its retail cost when new less seven-year straight-line depreciation, or which, if its economic life is less than seven years, shall be valued at its retail cost when new less straight-line depreciation over its economic life, except that, the value so obtained for such property, notwithstanding its economic life and as long as such property is being used, shall not be less than 20% of the retail cost when new of such property .... 25%"
(Emphasis added).
The term "public utility" is not defined in the constitution. The underscored language of the above-quoted provisions appears to contemplate legislative definition of the types of property to fall within each subclass for purposes of taxation. Courts in other jurisdictions have construed the language "as defined by law" in their respective state constitutions as making "reference to existing common and statutory law and such future definitive law as is necessary" to effectuate the purposes of the constitution to conditions existing at any point in time. American Youth Foundation v. Township of Benona,154 N.W.2d 554, 558 (Mich. 1967) (emphasis added). The intent is to retain in the hands of the legislature the power to change definitions and to correct future injustices due to changes in circumstances. Id., at 559. See also State v. Cedar Grove Refining Co., 152 So. 531, 533 (La. 1934) (phrase "as defined by law" in constitution permits legislature to change definition within reasonable bounds); Minutes, Senate Committee on Assessment and Taxation, April 8, 1985 (in response to questioning by Senator Fry, staff stated the constitutional provision allows legislation to develop definitions of various subclasses). However, any legislative definition of a term used in the constitution must be within reason and must conform to the commonly understood meaning of the term, as intended by the framers of the constitutional provision and the people adopting it. See Board of County Commissioners or Wyandotte County v. KansasAve. Properties, 246 Kan. 161 (1990) (in ascertaining meaning of constitutional provision, primary duty of courts is to look to intention of makers and adopters of that provision); Wall v. Harrison, 201 Kan. 600
(1968) (intention of makers and adopters of constitution is polestar in construction of constitution). The legislature may not grant partial exemptions under the guise of improper definitions. See State ex rel.Stephan v. Martin, 227 Kan. 456, 468 (1980); Colorado Interstate Gas Co.v. Board of Morton County Comm'rs, 247 Kan. 654, 659 (1990); 16 Am.Jur.2dConstitutional Law sec. 110 (1979) (the legislature has no power to assign to a term used in the constitution a meaning it does not have).
The term "public utility" first appeared in article 11, section 1 when the 1985 amendment to that provision was adopted in November of 1986. L. 1985, ch. 364. In 1985 the term was commonly defined as "[a] private business organization, subject to government regulation, that provides an essential service or commodity, such as water, electricity, transportation, or communication, to the public." The American Heritage Dictionary 1001 (2d College Ed. 1985). Blacks Law Dictionary defined the term generally as "[a] privately owned and operated business whose services are so essential to the general public as to justify the grant of special franchises for the use of public property or of the right of eminent domain, in consideration of which the owners must serve all persons who apply, without discrimination. It is always a virtual monopoly." Blacks Law Dictionary 1108 (5th Ed. 1979). Two statutory definitions for the term "public utility" existed at the time the amendment was adopted. K.S.A. 79-5a01, dealing with state valuation of certain property for tax purposes, provided in part:
 "(a) As used in this act, the terms `public utility' and `public utilities' shall mean every individual, company, corporation, association of persons, lessees or receivers that now or hereafter are in control, manage or operate a business of:
. . .
 "(3) transmitting to, from, through or in this state telephonic messages;
. . .
 "(b) The terms `public utility' or `public utilities' shall not include:
 . . . (2) any individual, company, corporation, association of persons, lessee or receiver which is engaged in the business of selling or leasing telephonic equipment, products or services and (A) which is not regulated by either the state corporation commission or the federal communications commission as to the price of such equipment, products or services or (B) which does not offer telephone service to the public under tariffs approved by the state corporation commission or the federal communications commission, even if such individual, company, corporation, association of persons, lessee or receiver is a subsidiary of or affiliated with a public utility providing telephone service to the public; or (3) the nonregulated portion of a public utility's telephone service operation where that activity is conducted separately from its public utility telephone service operation or separate books and records or accounts are maintained for such nonregulated operation; . . . ." L. 1983, ch. 314, sec. 1.
K.S.A. 66-104, dealing with the jurisdiction of the Kansas corporation commission (KCC), defined "public utility" to include entities that "own, control, operate or manage, except for private use, any equipment, plant or generating machinery, or any part thereof, for the transmission of telephone messages . . . in or through any part of the state . . ." with certain exceptions. L. 1978, ch. 263, sec. 2.
Neither K.S.A. 79-5a01 nor 66-104 reference article 11, section 1 of the constitution or attempt to make the definitions contained in those statutes applicable for purposes of the constitutional provision. [We note that amending either or both of these sections may not impact on the provisions in the constitution if the legislation does not attempt to make the amendments applicable for purposes of the constitutional classifications.] The Kansas Supreme Court has held that the definitions in K.S.A. 66-104, establishing the KCC's scope of authority, should not be read into K.S.A. 79-5a01, as the two statutes serve totally separate purposes. First Page, Inc. v. Cunningham, 252 Kan. 593, 600 (1992). It would therefore appear that the definitions in K.S.A 66-104, as amended by L. 1978, ch. 263, sec. 2, should also not be read into or used to determine the makers' or adopters' understanding of a term used in a taxing provision of the constitution. As for K.S.A. 79-5a01, as amended by L. 1983, ch. 314, sec. 1, that provision did not actually define the term "public utility," it simply set forth a laundry list of entities to be considered as public utilities for purposes of valuation by the state. There are, however, some clues as to how the list was arrived at. Whether the entity was regulated appeared to be important, as well as whether the entity operated in more than one county. The Kansas Supreme Court also has listed characteristics that typically denote a public utility: Its service is an essential one; it is monopolistic; it makes use of public property or rights-of-way; it requires a franchise or authority to operate; it is guaranteed a rate of return on investments and can offset a tax increase by requesting a rate increase. First Page,supra at 605. While this case was decided after the constitutional amendment in question was adopted, we believe the legislature may find it useful in determining what types of entities it may include within the definition of "public utilities" for purposes of tax classification.
Whether an "interexchange telecommunications carrier" that does not provide basic local exchange telephone services (1993 House Bill No. 2535) meets the commonly understood definition of the term "public utility" is a question of fact. We have been provided arguments by two long distance carriers, ATT and MCI, that these two carriers, as they exist today, do not meet that definition. We decline to determine this issue of fact, but opine only that the legislature may, under article 11, section 1 of the Kansas constitution, define and redefine the term "public utility" as necessary and reasonable to effectuate the makers' and adopters' intent in treating such property differently for purposes of taxation, as long as the legislative definition remains consistent with the commonly understood meaning of the term.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm