The Honorable Carl Dean Holmes Chairman, House Utilities Committee State Capitol, Room 115-S Topeka, Kansas 66612-1504
Dear Representative Holmes:
You request our opinion regarding the authority of the Legislature to statutorily define certain property as commercial and industrial, as opposed to public utility property, for purposes of property tax classification. Due to time constraints, we initially responded by letter dated March 16, 1999. As per your request, we now address the question with a formal opinion.
The property in question is that which is defined in 1999 House Bill No. 2400 (H.B. 2400) as:
 "[P]roperty used solely in the generation, marketing and sale of electricity generated by an electric generation facility no portion of which is included in the rate base of: (1) An electric public utility that is subject to rate regulation by the state corporation commission; (2) a cooperative, as defined by K.S.A. 17-4603 and amendments thereto, or a nonstock member-owned cooperative corporation incorporated in this state; or (3) a municipally owned or operated electric utility."[1]
The bill would amend the definition of "public utility" found in K.S.A. 1998 Supp. 66-104 to include the following language:
 "The term `public utility' shall not include any activity of an otherwise jurisdictional entity as to the generation, marketing and sale of electricity generated by a nonnuclear electric generation facility construction no portion of which is included in the rate base of: (1) An electric public utility that is subject to rate regulation by the state corporation commission; (2) any cooperative, as defined by K.S.A. 17-4603 and amendments thereto, or any nonstock member-owned cooperative corporation incorporated in this state; or (3) a municipally owned or operated electric utility."[2]
The definition of "public utility" found in K.S.A. 79-5a01 would also be amended to exclude:
 "the business of generating, marketing and selling electricity generated by a nonnuclear electric generation facility no portion of which is included in the rate base of: (A) An electric public utility that is subject to rate regulation by the state corporation commission; (B) a cooperative, as defined by K.S.A. 17-4603 and amendments thereto, or a nonstock member-owned cooperative corporation incorporated in this state; or (C) a municipally owned or operated electric public utility."[3]
Article 11, Section 1 of the Kansas Constitution provides for the classification of both real and personal property, and fixes the assessment rate for each subclass.[4] Thus, nonexempt property that falls within the subclass of "public utility real property . . ." or "public utility tangible personal property . . ." must be assessed at the rate of 33% of its value, whereas property falling within the subclass of "real property used for commercial and industrial purposes . . ." or "commercial and industrial machinery and equipment . . ." must be assessed at 25%.[5] Your question is whether the Legislature may define the term "public utility" so as to exclude certain property from application of the 33% assessment rate.
This question was addressed by then Attorney General Robert T. Stephan in Attorney General Opinion No. 93-142. The Opinion concluded that because the term "public utility" is not defined in Article 11, Section 1 of the Constitution, and because that Section specifically authorizes the Legislature to define by law what property is in each subclass, there is some room for legislative interpretation of what is meant by the term "public utility" as used in Article 11, Section 1. "However, any legislative definition of a term used in the constitution must be within reason and must conform to the commonly understood meaning of the term, as intended by the framers of the constitutional provision and the people adopting it. . . . The legislature may not grant partial exemptions under the guise of improper definitions."[6] The Opinion then examined definitions for the term "public utility" that existed at the time the Classification Amendment was framed and adopted in 1985-1986. The American Heritage Dictionary defined the term at that time as "[a] private business organization, subject to government regulation, that provides an essential service or commodity, such as water, electricity, transportation, or communication, to the public."[7] Black's Law Dictionary defined the term as "[a] privately owned and operated business whose services are so essential to the general public as to justify the grant of special franchises for the use of public property or of the right of eminent domain, in consideration of which the owners must serve all persons who apply, without discrimination. It is always a virtual monopoly."[8] In addition to these definitions discussed in Attorney General Opinion No. 93-142, we have found case law definitions that would have been considered common knowledge at the time the Classification Amendment was adopted. In determining that a common carrier was a "public utility" for purposes of the statute relating to collection of delinquent taxes owed by public utilities operating in not more than four counties, the Court found:
 "In the absence of expressed intention otherwise it must be assumed that the legislature here used the term `public utility corporation' in its broad and general meaning. . . . The essential characteristic is that the utility be one which is dedicated to public use, without unreasonable discrimination. From 51 C.J. 4 we quote:
 "`A "public utility" has been described as a business organization which regularly supplies the public with some commodity or service, as electricity, gas, water, transportation, or telephone or telegraph service. . . . the distinguishing characteristic of a public utility is the devotion of private property by the owner or person in control thereof to such a use that the public generally, or that part of the public which has been served and has accepted the service, has a right to demand that the use or service, so long as it is continued, shall be conducted with reasonable efficiency and under proper charges.'"[9]
Two cases of limited interest (because they interpret the definition in K.S.A. 66-104, which the Court has found to be of limited relevance in determining what a public utility is for tax purposes[10]) are State ex rel. Grant v. City ofCoffeyville[11] and City of Cimarron v. Midland Water, Light Ice Co.[12] In the former the Court held that a producer of natural gas having one customer only, the City of Coffeyville, was not a public utility as then defined by K.S.A. 66-104 because it was "not engaged in general commercial distribution of natural gas, and it does not have a pipe line long enough to bring it within the statutory definition of a public utility."[13]
Conversely, in Midland Water the Court concluded that a company "in arranging to supply the [City of Cimarron] with electricity, whether for its own use or to be distributed among its residents, was acting in its character as a public utility" for purposes of regulation by the then public utilities commission.[14] One important factor in this latter case was that the company provided electricity to several other cities as well.[15]
While definitions may vary depending on the context in which the term is used, certain characteristics are common to a majority of the definitions expressed above: The service or commodity provided is an essential one that is required to be made available without discrimination to all who apply; the entity has been granted eminent domain or special franchises for use of public property; the entity is subject to regulation and guaranteed a rate of return on investments; the entity is often monopolistic.[16]
We note that K.S.A. 79-5a01 does not, and did not in 1985-1986,[17] include these characteristics in its definition of "public utility" for purposes of State valuation. However, in our opinion, with regard to electricity in particular, the statutory definition's failure to include the characteristics generally thought of as constituting a public utility does not necessarily mean that those factors were consciously excluded from the definition, for in 1969 (when this provision was enacted[18]) companies capable of generating, conducting or distributing electric power generally possessed those characteristics; it may have been considered unnecessary to spell them out. As electrical generation and distribution systems continue to evolve, it may at some point become necessary to include such characteristics in the definition in order to maintain consistency with the common understanding of the term "public utility" and avoid capturing within the net of the definition entities not possessing any of those characteristics.
Attorney General Opinion No. 93-142 concluded that "the legislature may, under article 11, section 1 of the Kansas constitution, define and redefine the term `public utility' as necessary and reasonable to effectuate the makers' and adopters' intent in treating such property differently for purposes of taxation, as long as the legislative definition remains consistent with the commonly understood meaning of the term." We concur with this conclusion and further opine that entities generally having the characteristics listed above can be included by the Legislature in the definition of public utility for property tax purposes and conversely, entities generally having these characteristics cannot by statute be excluded from the definition of public utility for property tax purposes.
With regard to your specific question, the bill would exclude from the K.S.A. 79-5a01 definition of public utility "the business of generating, marketing and selling electricity generated by a nonnuclear electric generation facility no portion of which is included in the rate base of: (A) An electric public utility that is subject to rate regulation by the state corporation commission; (B) a cooperative, member-owned cooperative corporation incorporated in this state; or (C) a municipally owned or operated electric public utility." The element of government regulation appears to be absent from the type of entity sought to be excluded from the definition of public utility. We assume that any entities meeting this definition would not be monopolistic, but rather competitive. If it is a competitive industry, or an entity that generates electricity for its own use or that of just one customer, presumably there would be no need to require that the service or commodity be offered on a nondiscriminatory basis to everyone who applies to purchase the service or commodity. As far as we can tell, no franchise or eminent domain powers will be granted the type of entity in question; if the entity needs to use transmission lines, it will have to contract to use those already in existence or otherwise acquire the land on which any lines are installed. If these are indeed the facts, it appears that an argument can be made that these entities do not possess many of the "trappings" of a public utility and therefore can be excluded from the definition legislatively for property tax purposes. [This argument is particularly compelling for companies that only market or sell electricity as opposed to generating it.] On the other hand, 1985 entities that generated electricity for sale to the public generally were public utilities and it would not seem unreasonable for the Legislature to continue to define them as public utilities today even if some of the "trappings" are no longer present.
In our opinion, the Legislature has some latitude in the instant situation due to the change of circumstances attending generation and distribution of electric power over the past few years. Legislative acts are presumed constitutional, and must be clearly contrary to the Constitution before the Courts will strike them down.[19] At this point in time, the Legislature may go either way with its definition and may choose to treat these "new" types of entities either as public utilities or not, as long as there is a rational basis for the decision and an argument can be made that they do, or do not, possess the basic characteristics of a public utility so that the definition remains consistent with the common understanding of what that term meant at the time the Classification Amendment was adopted.
In conclusion, the Legislature may, under Article 11, Section 1 of the Kansas Constitution, define the term "public utility" for purposes of property tax classification, as long as the legislative definition remains consistent with the commonly understood meaning of the term. Common definitions of the term "public utility" in 1985-1986, the years the Classification Amendment was framed and adopted, generally included characteristics such as provision of an essential service or commodity to the public on a nondiscriminatory basis and, for such purposes, having a franchise, eminent domain powers, or other ability to acquire private property for a public purpose.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm
[1] H.B. 2400, § 13.
[2] Id. at § 12.
[3] Id. at § 14.
[4] Appeal of ANR Pipeline Co., 254 Kan. 534, 542 (1994).
[5] Kan. Const., Art. 11, § 1(a) Class 1 (5), (6), Class 2 (3), (5).
[6] Attorney General Opinion No. 93-142. See also State exrel. Stephan v. Parrish, 256 Kan. 746, 762 (1994); Board of CountyCommissioners of Wyandotte County v. Kansas Ave. Properties,246 Kan. 161 (1990); Wall v. Harrison, 201 Kan. 600 (1968); State exrel. Stephan v. Martin, 227 Kan. 456, 468 (1980); ColoradoInterstate Gas Co. v. Board of Morton County Comm'rs,247 Kan. 654, 659 (1990).
[7] American Heritage Dictionary 1001 (2d college Ed. 1985).
[8] Black's Law Dictionary 1108 (5th Ed. 1979).
[9] Board of Commissioners of Edwards County v. Simmons,159 Kan. 41, 52 (1944) (emphasis omitted). See also State v.consumers Warehouse Market, 183 Kan. 502, 506 (1958), quotingNebbia v. New York, 291 U.S. 502, 531, 54 S.Ct. 505, 78 L.Ed. 940
(1934); Home Cab Co. v. City of Wichita, 140 Kan. 451, 454-455
(1934); State ex rel. Naylor v. Dodge City, M. T.R. Co.,53 Kan. 377, 378-379 (1894); Whitewater River Watershed Joint Dist. No. 22v. Butler Rural Elec. Co-op. Ass'n, Inc., 6 Kan. App. 2d 8, 13-14
(1981).
[10] First Page, Inc. v. Cunningham, 252 Kan. 593, 600
(1993). See also In re Appeal of Topeka SMSA Ltd. Partnership,260 Kan. 154, 164, 168 (1996); Simmons, supra note 9.
[11] 138 Kan. 909 (1934).
[12] 110 Kan. 812 (1922).
[13] Supra, note 10 at 910-911.
[14] Supra, note 11 at 814-815.
[15] Id. at syl. ¶ 1.
[16] See First Page, Inc., 252 Kan. at 605; In re Topeka SMSALtd., 260 Kan. at 165.
[17] L. 1983, Ch. 314, § 1; L. 1986, Ch. 371 § 1.
[18] L. 1969, Ch. 434, § 1.
[19] State ex rel. Tomasic v. Unified Gov't of WyandotteCounty/Kansas City, 265 Kan. 779, 787 (1998), quoting State exrel. Schneider v. Kennedy, 225 Kan. 13, 20-21 (1978).