899 P.2d 162

Clark J. KERR and Billie Sue Kerr, hus-
band and wife, Susan Moran, Steve Al-
len, and John Udall, on behalf of
themselves and all persons resident in
Arizona who were employees of the
United States Government in any one
or all of the years during the period
1984 through the present and who paid
Arizona income taxes on federal retire-
ment contributions for any of such
years, and all members of the certified
class, Plaintiffs–Appellants, Cross–Ap-
pellees,

v.

Paul WADDELL, individually and as Di-
rector of the Department of Revenue of
the State of Arizona, Craig Cormier, in-
dividually and Assistant Director of the
Arizona Department of Revenue, and all
unknown agents, employees, successors
in office, assistants and all others acting
in concert with them or at their di-
rection, and the Department of Revenue
of the State of Arizona, Defendants–Ap-
pellees, Cross–Appellants.

No. 1 CA–TX 92–0010.

Court of Appeals of Arizona,
Division 1, Department T.

Sept. 13, 1994.

Order Correcting Opinion and Denying
Motion for Reconsideration
Nov. 10, 1994.

Review Granted and Remanded
July 13, 1995.

**4**

Bonn, Luscher, Padden & Wilkins, Chartered by Brian A. Luscher, Paul V. Bonn, Randall D. Wilkins, Phoenix, and O'Neil, Cannon & Hollman, S.C. by Eugene O. Duffy and Gregory W. Lyons, Milwaukee, WI, for plaintiffs-appellants.

Grant Woods, Atty. Gen. by Gail H. Boyd, Patrick Irvine, Asst. Attys. Gen., Phoenix, for defendants-appellees.

## OPINION

TOCI, Judge.

This is an action by federal employees Clark Kerr, Susan Morgan, Steve Allen, and John Udall (collectively, "the taxpayers") seeking relief under 42 U.S.C. section 1983 (1988) against the director and assistant director of the Arizona Department of Revenue ("ADOR"), both individually and in their official capacities, and ADOR itself (collectively, "defendants") for discriminatory taxation.

Since 1985, the effect of Arizona law was to tax 100 percent of federal employees' mandatory contributions to federal retirement plans, while exempting from Arizona income taxation most state and local governmental employees' retirement plan contributions. The taxpayers filed for themselves and on behalf of all other residents of Arizona who were employees of the United States government and paid Arizona income taxes on their federal retirement contributions during the period in question. The taxpayers assert that Arizona's scheme for income taxation of mandatory contributions to federal, state, and local governmental retirement systems violates the federal constitutional doctrine of intergovernmental tax immunity codified in 4 U.S.C. section 111 (1988).

The Maricopa County Superior Court ("tax court") partially agreed with the taxpayers. It granted the individual taxpayers and the taxpayer class partial declaratory relief on their challenge to Arizona's scheme of taxation of governmental retirement plan contributions. The tax court, however, denied the taxpayers' claims for refunds of alleged overpayments of state income tax and for injunctive relief. Additionally, the tax court granted summary judgment in favor of the individual defendants on the taxpayers' claim for 42 U.S.C. section 1983 damages. The taxpayers appeal.

We reverse the tax court's judgment in part, affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. We summarize the questions on appeal, and our answers to those questions, as follows:

1. Does a violation of the doctrine of intergovernmental tax immunity give rise to an enforceable right under 42 U.S.C. section 1983? Yes. Private individuals who are subjected to discriminatory taxation because of a violation of the doctrine of

intergovernmental tax immunity may claim relief under section 1983.

2. Did the tax court lack jurisdiction over the taxpayers' refund claims because the taxpayers failed to exhaust their administrative remedies before ADOR and the State Board of Tax Appeals? Yes. We resolved a similar issue against the taxpayers in *Estate of Bohn v. Waddell*, 174 Ariz. 239, 848 P.2d 324 (App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3000, 125 L.Ed.2d 693, *reh. denied*, —— U.S. ——, 114 S.Ct. 15, 125 L.Ed.2d 766 (1993).

3. Does the doctrine of exhaustion of administrative remedies apply to the taxpayers' section 1983 claims for damages and for injunctive relief? No. We established a rule against administrative exhaustion in *Zeigler v. Kirschner*, 162 Ariz. 77, 83, 781 P.2d 54 (App.1989). We see no reason to adopt a different rule for section 1983 class action challenges to an unconstitutional taxing statute.

4. Did the tax court properly rule that Ariz.Rev.Stat.Ann. ("A.R.S.") section 43–1022(2) (1980) (amended Supp.1993) was unenforceable because it violated the intergovernmental tax immunity doctrine? Yes. Section 43–1022's exclusion from Arizona gross income of state and local employees' contributions to retirement plans not "picked up" by the employer under section 414(h) of the Internal Revenue Code ("I.R.C.") discriminates against similarly situated federal employees in violation of 4 U.S.C. section 111 and the doctrine of intergovernmental immunity.

5. Did the trial court abuse its discretion in declining to enjoin further enforcement of A.R.S. section 43–1022(2)? No. The refusal to grant injunctive relief was proper because of the legislature's later repeal of the exclusion and the trial court's ruling on the merits that *Davis v. Michigan Department of Treasury*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), was not retroactive.[1]

6. Did the trial court err in sustaining A.R.S. section 43–1001(2) (Supp.1993) against the taxpayers' challenge? · Yes. By excluding state and local employees' retirement plan contributions from Arizona gross income, while at the same time including federal employees retirement plan contributions in Arizona gross income, section 43–1001(2) violates 4 U.S.C. section 111 (1988) and the doctrine of intergovernmental tax immunity.

7. Did the tax court correctly decline to declare that the taxpayers were entitled to be exempted prospectively from Arizona income taxation of their contributions to federal retirement plans? Yes. The legislature may comply with the mandate in *Davis* by withdrawing benefits from the favored class as well as by extending benefits to the excluded class. Here, the legislature may amend section 43–1001(2), as it has amended section 43–1022, to eliminate an income tax exclusion for contributions to state or local retirement plans.

8. Did the tax court err in granting summary judgment in favor of the individual defendants on the taxpayers' 42 U.S.C. section 1983 damages claim based on qualified immunity? No. The retroactivity of *Davis* remained unsettled until *Harper*. Likewise, the application of 4 U.S.C. section 111 to employee retirement plans cannot be said to have been "clearly established law" until now. Thus the individual defendants were entitled to qualified immunity for their acts in enforcing the state's income tax scheme.

## I. BACKGROUND

A long-standing principle once prohibited states from taxing federal instrumentalities. *Estate of Bohn v. Waddell*, 174 Ariz. 239, 244, 848 P.2d 324, 329 (App.1992). This principle became known as the doctrine of intergovernmental tax immunity. *Id.* At one time, neither federal nor state governmental entities could tax the employees of the other. *Id.* Later, courts began to limit the doctrine

---

1. Nevertheless, we hold that both A.R.S. sections 43–1001(2) and 43–1022(2) violate the intergovernmental tax immunity doctrine. And, in *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the United States Supreme Court recently held, as a matter of federal law, that *Davis* is to be applied retroactively.

of intergovernmental tax immunity. *Id.* And, when Congress passed the Public Salary Tax Act of 1939, it specifically codified the requisite nondiscriminatory treatment for intergovernmental taxation. *See* 4 U.S.C. § 411 (1988).

In *Davis v. Michigan Department of Treasury,* 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), the United States Supreme Court invalidated Michigan's income tax scheme under these principles. There, Michigan taxed retirement benefits paid by the federal government but exempted from taxation all retirement benefits paid by the state or its political subdivisions. *Id.* at 805–06, 109 S.Ct. at 1502–03. The Supreme Court held that a tax "favoring retired state and local government employees over retired federal employees" violated 4 U.S.C. section 111 and the principles of intergovernmental tax immunity. *Id.* at 817, 109 S.Ct. at 1509.

Later, after other states refused to accord full retroactive effect to *Davis,* and after the Arizona Tax Court ruled in this case that *Davis* did not apply retroactively, the United States Supreme Court held that *Davis* does apply retroactively. *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). Although in *Harper* the Court did not order a refund, it stated that "the Constitution requires Virginia 'to provide relief consistent with federal due process principles.'" *Id.* at ——, 113 S.Ct. at 2519 (quoting *American Trucking Ass'n, Inc. v. Smith,* 496 U.S. 167, 181, 110 S.Ct. 2323, 2332, 110 L.Ed.2d 148 (1990) (plurality opinion)). The Court noted that "a State may either award full refunds to those burdened by an unlawful tax or issue some other order that 'create[s] in hindsight a nondiscriminatory scheme.'" *Harper,* 509 U.S. at —— – ——, 113 S.Ct. at 2519–20

(quoting *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco,* 496 U.S. 18, 40, 110 S.Ct. 2238, 2252, 110 L.Ed.2d 17 (1990)).

## II. FACTUAL AND PROCEDURAL HISTORY

### A. The Taxpayers' Action

After the Supreme Court's decision in *Davis,* the taxpayers filed a complaint in the tax court. The taxpayers are current and former federal employees who paid Arizona income taxes within a four year period on their mandatory contributions to federal retirement plans.[2] Neither the individual taxpayers nor the proposed taxpayer class prosecuted claims for refunds of Arizona income taxes through the Arizona administrative process before filing the action in superior court.[3] *See* A.R.S. §§ 42–122 (1991) (appeal to ADOR), 42–124 (1991) (appeal to state board of tax appeals and superior court) and 42–130 (1991) (procedure following a denial of a tax refund).

### B. Tax Court Rulings

Ruling on cross-motions seeking summary judgment as to various aspects of the taxpayers' case, the tax court held: (1) the taxpayers were not required to exhaust their administrative remedies before bringing the action; (2) as a matter of law the individual defendants were qualifiedly immune from liability on the taxpayers' claims for damages pursuant to 42 U.S.C. section 1983; (3) a violation of 4 U.S.C. section 111 is legally cognizable under 42 U.S.C. section 1983; (4) the action was properly maintainable as a class action; (5) A.R.S. section 43–1022(2), as applied, violated the federal constitutional doctrine of intergovernmental tax immunity and therefore illegally discriminated against

---

**2.** The taxpayers' action sought: (1) a declaration that the Arizona income taxation scheme under which state and local employees' mandatory contributions to state and local retirement systems were exempted from Arizona taxable income, while federal employees' mandatory contributions to federal retirement systems were not, violated 4 U.S.C. section 111 and the doctrine of intergovernmental tax immunities; (2) injunctive relief to prevent continued exaction of the tax on federal employees' retirement contributions; (3) damages against the individual defendants pur-

suant to 42 U.S.C. section 1983; (4) certification of a class of approximately 41,500 federal employees, their estates and survivors; and (5) refunds for the taxpayer class of all Arizona income taxes paid on federal retirement system contributions in and after 1984.

**3.** Since the filing of this action, however, one taxpayer has attempted to exhaust his administrative remedies. *See In re Allen,* No. 932328–B (Ariz. Dept. of Revenue Dec. 13, 1993).

the taxpayers; and (6) except to the extent that A.R.S. section 43–1022(2) discriminated against the taxpayers, the Arizona scheme of income taxation of contributions to governmental retirement plans did not violate the doctrine of intergovernmental tax immunity.

Although the tax court declared the state income tax exemption violative of the intergovernmental immunity doctrine, it denied the taxpayers' motion for an order directing the state to extend the income tax exemption to the taxpayers prospectively. The tax court also determined that, pursuant to *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the legal principle established by the Supreme Court in *Davis* would not be retroactively applied. Consequently, the taxpayers were not entitled to refunds of Arizona income taxes previously paid on contributions to federal retirement systems.

The tax court entered judgment in accordance with its rulings. The taxpayers appeal. The individual defendants and ADOR cross-appeal.

## III. ANALYSIS

### A. A Violation of the Doctrine of Intergovernmental Tax Immunity Gives Rise to Relief Under 42 U.S.C. Section 1983

On cross-appeal, defendants contend that as a matter of law an alleged violation of the intergovernmental tax immunity doctrine, as codified in 4 U.S.C. section 111, cannot legally support an action under 42 U.S.C. section 1983. Defendants correctly observe that not all federal statutes secure individual rights for violation of which actions may be brought under 42 U.S.C. section 1983. *See generally Dennis v. Higgins*, 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). Defendants argue that neither the Supremacy Clause of the United States Constitution nor 4 U.S.C. section 111 secure federal rights specifically intended to protect individuals against government intrusion. We disagree.

Defendants' analysis fails to mention *Davis*, the very case that struck down the discriminatory taxation of federal employees' retirement benefits. There, Michigan argued that it could not violate the doctrine of intergovernmental tax immunity unless the state's tax interfered with the federal government's ability to perform its governmental functions. Although not in the context of an analysis of 42 U.S.C. section 1983, the Supreme Court rejected this contention. The Court stated:

> It is true that intergovernmental tax immunity is based on the need to protect each sovereign's governmental operations from undue interference by the other. But it does not follow that private entities or individuals who are subjected to discriminatory taxation on account of their dealings with a sovereign cannot themselves receive the protection of the constitutional doctrine. Indeed, all precedent is to the contrary.

*Davis*, 489 U.S. at 814, 109 S.Ct. at 1507 (citations omitted); *see also Higgins*, 498 U.S. at 462, 111 S.Ct. at 879 (Kennedy, J., dissenting) ("[T]he Court's rationale creates a § 1983 cause of action when a State violates the constitutional doctrine of intergovernmental tax immunity"); *Hogan v. Musolf*, 163 Wis.2d 1, 471 N.W.2d 216 (1991), *cert. denied*, 502 U.S. 1030, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992) (violations of 4 U.S.C. section 111 are actionable under 42 U.S.C. section 1983).

### B. Effect on the Taxpayers' Claims of Failure to Exhaust State Administrative Remedies

#### 1. Effect on State Refund Claims

Defendants further argue on cross-appeal that the tax court erred in holding that the taxpayers were not required to exhaust the state administrative remedies provided by A.R.S. sections 42–122, 42–124, and 42–130 before bringing claims in the tax court for tax refunds. They assert that our decision in *Estate of Bohn* is dispositive on this issue.

The taxpayers, on the other hand, present multiple arguments in support of their view that administrative exhaustion is not re-

quired. First, they argue that the administrative process conflicts with the superior court's original jurisdiction under the Arizona Constitution over claims involving the legality of taxes. Second, they contend that the administrative process is permissive, not mandatory. Third, they assert that the administrative process is futile because neither the ADOR nor the Board of Tax Appeals ("BOTA") has authority to declare Arizona income tax statutes unconstitutional. Finally, they contend that the legislature's passage of A.R.S. section 35–196.03 (Supp.1993) has stripped BOTA of whatever power it once had to fashion a refund remedy. According to the taxpayers, because section 35–196.03 conditions the right to a refund on a legislative appropriation, the administrative scheme is inadequate as a matter of law.

We first reject the taxpayers' argument that A.R.S. section 35–196.03 renders the administrative process futile. Testimony obtained from ADOR officials clearly indicates that monies refunded for taxes paid under an unconstitutional statute are not paid from the state treasury but from current tax collections. According to the undisputed evidence in the record, total tax refunds claimed by the taxpayers do not exceed current tax revenues. Under these circumstances, no legislative appropriation is required to pay refunds. Consequently, section 35–196.03 does nothing to render the administrative process inadequate.

Furthermore, we agree with defendants that *Estate of Bohn* is dispositive on the remaining issues raised by the taxpayers. There, we rejected the taxpayers' argument that article 6, section 14(2) of the Arizona Constitution [4] gives the superior court original jurisdiction over refund claims. *Id.* 174 Ariz. at 246, 848 P.2d at 331. We held that this constitutional provision "neither expressly nor impliedly prevents the legislature from conditioning the exercise of the superior court's jurisdiction" on the exhaustion of administrative remedies. *Id.* We also disagreed with the taxpayers' argument that the exhaustion of administrative remedies was

merely optional. *Id.* at 245–46, 848 P.2d at 330–31. We concluded that even if the taxpayers were correct in their argument that the ADOR cannot determine the constitutionality of tax statutes, exhaustion would be appropriate. *Id.* at 250, 848 P.2d at 335. Thus, the *Estate of Bohn* rationale answers the taxpayers' remaining arguments on the exhaustion of administrative remedies.

## 2. Effect on 42 U.S.C. Section 1983 Claims

■ At the same time, given the different procedural facts of this case, it is important that we clearly delineate the reach of our holding in *Estate of Bohn*. There, the taxpayers did not challenge the tax court's dismissal of their section 1983 damage claims against the individual defendants. *See Estate of Bohn*, 174 Ariz. at 242, 848 P.2d at 327. Thus, the defendants in *Estate of Bohn* asserted the defense of failure to exhaust state administrative remedies only in opposing the taxpayers' state-law income tax refund claim. We were never required to decide if the taxpayers' failure to exhaust administrative remedies deprived the tax court of jurisdiction over their 42 U.S.C. section 1983 claims for declaratory and injunctive relief and damages. Here, the taxpayers squarely present this argument.

Defendants acknowledge, as they must, that the Supreme Court's decision in *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), generally invalidates state laws that make bringing a section 1983 claim in state court more burdensome than if brought in federal court. *See also Zeigler v. Kirschner*, 162 Ariz. 77, 83, 781 P.2d 54, 60 (App.1989) (failure to exhaust administrative remedies did not preclude plaintiffs' 42 U.S.C. section 1983 claim). Defendants base their argument for the dismissal of the taxpayers' section 1983 claims, however, on a line of state court cases that rest on the Supreme Court's decision in *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981).

---

4. Article 6, section 14 of the Arizona Constitution states: "The superior court shall have original jurisdiction of: ... 2. Cases of equity and at law which involve the title to or possession of real property, or the legality of any tax, impost, assessment, toll or municipal ordinance."

In *McNary*, the Supreme Court held that the doctrine of judicial comity barred *federal courts* from granting relief in section 1983 actions challenging the validity of state tax systems where state judicial remedies were plain, adequate and complete. *Id.* at 116, 102 S.Ct. at 186. A number of state decisions have held that *McNary* creates an exception to the general rule of *Felder*.[5] These cases establish that in section 1983 actions involving state taxes, *McNary* permits state statutory and common law rules that condition the exercise of state court jurisdiction on prior exhaustion of state administrative remedies.

Defendants, however, rely on two state court decisions, *Nutbrown v. Munn*, 311 Or. 328, 811 P.2d 131 (1991), *cert. denied*, 502 U.S. 1030, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992), and *Hogan*, 163 Wis.2d 1, 471 N.W.2d 216, to support their argument that administrative exhaustion is required as a precondition to the assertion of a section 1983 claim. We are not persuaded by these decisions.

Turning first to *Hogan*, we think that to the extent it held that administrative exhaustion is a precondition to asserting a section 1983 claim, the case was incorrectly decided. *Hogan* relies on the holding in *McNary* that a federal court may not entertain a taxpayer's section 1983 claim until the taxpayer has exhausted state administrative remedies. But the *McNary* analysis required only that a taxpayer exhaust the state administrative procedures that are a precondition to suit in state court. Thus, the Wisconsin court went beyond the holding in *McNary* and interpreted the exhaustion doctrine to require not only the exhaustion of administrative remedies, but the exhaustion of all available judicial remedies prior to bringing a section 1983 action. *Hogan*, 471 N.W.2d at 223–24. This result appears to violate the federal constitutional doctrine that a state court may not refuse to entertain a federal cause of action. *See Howlett v. Rose*, 496 U.S. 356, 369, 110 S.Ct. 2430, 2439, 110 L.Ed.2d 332 (1990).

Furthermore, both *Nutbrown* and *Hogan* involve administrative remedies not available in Arizona. As defendants point out, the statutes in Oregon and Wisconsin extend *judicial* powers to their administrative tax agencies. The administrative agencies in both states have the authority to declare taxing statutes unconstitutional. *See Nutbrown*, 811 P.2d at 141 ("Oregon administrative agencies have the power to declare statutes and rules unconstitutional."); *Hogan*, 471 N.W.2d at 224 (ADOR has the "authority to determine whether ... the Wisconsin taxing scheme also violates federal law or the constitution."). And, in Oregon, the administrative remedies available to the taxpayers include declaratory and injunctive relief as well as the right to a refund. *Nutbrown*, 811 P.2d at 139.

■ In contrast, although the ADOR has the power to apply constitutional doctrines in tax cases, it does not have the power to determine whether the Arizona income tax scheme is unconstitutional. *Estate of Bohn*, 174 Ariz. at 248–50, 848 P.2d at 333–35. Furthermore, under the Arizona administrative scheme, the administrative refund process contains no provision for declaratory or injunctive relief. Arizona law narrowly focuses on administrative challenges to deficiency assessments and denials of specific refund claims. *See* A.R.S. §§ 42–122, 42–124 and 42–130. Thus, neither *Hogan* nor *Nutbrown* is squarely applicable here as precedent.

Furthermore, we reject defendants' argument that because federal retirees filing section 1983 claims in federal courts would be required to exhaust any applicable state remedies, a similar rule should apply in state courts. Although both *Hogan* and *Nutbrown* reach this conclusion, we think the better rule is that announced by the Pennsylvania Supreme Court in *Murtagh v. County of Berks*, 535 Pa. 50, 634 A.2d 179 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 71 (1994). There, the court observed:

---

5. *See, e.g., Boughton Trucking & Materials, Inc. v. County of Will*, 229 Ill.App.3d 576, 171 Ill.Dec. 299, 593 N.E.2d 1119 (1992); *Dean v. Kansas*, 250 Kan. 417, 826 P.2d 1372 (1992), *cert. denied sub nom., Zarda v. Kansas*, 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 566 (1992); *Zarda v. Kansas*, 250 Kan. 364, 826 P.2d 1365 (1992), *cert. denied*, 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 566 (1992).

While exhaustion of state statutory remedies is required in federal courts, exhaustion is not required in the courts of this state insofar as the action is a class action challenging the constitutionality of a system of property tax assessment. This is so because the principle of comity that causes a federal court to refrain from exercising jurisdiction over section 1983 tax assessment cases has no relevance to a class action challenging, in state court, the constitutionality of a system of property tax assessment.

*Id.* 634 A.2d at 185. This conclusion is consistent with the view of one commentator:

"The essential federalism policy behind the Court's decision in *McNary* and the Tax Injunction Act of protecting the states from federal judicial interference with their core function of tax collection is simply not compromised when a *state* court declares a state taxation policy unconstitutional.... [A] major interference with state tax policy results from a state court's declaration that its taxation policy is unconstitutional. But this is true whether the ruling is made under a state law remedy or section 1983.... If a state tax is found unconstitutional, the elements of a 1983 claim for relief are satisfied and section 1983 should be available."

Sandra B. McCray, *U.S. Supreme Court Permits Commerce Clause Suits Under Civil Rights Statute,* 1 J. Multistate Tax'n 258, 262 (John L. Coalson, et al. eds. 1992) (quoting Martin A. Schwartz and John E. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees,* 803–804 (2d ed. 1991))

For several reasons, we think the above rationale should be adopted here. The rule of exhaustion of administrative remedies is a rule of judicial administration that is usually applied because of an express statutory mandate. *Estate of Bohn,* 174 Ariz. at 246, 848 P.2d at 331. Arizona has no express statute that requires the exhaustion of administrative remedies before one may attack the constitutionality of a tax statute. Further, our supreme court has permitted injunctive relief to restrain the discriminatory enforcement of the tax laws. *See State Tax Comm'n v. Superior Court,* 104 Ariz. 166, 169, 450 P.2d 103, 106 (1969) (Injunction is an appropriate remedy where the "mode of assessment produces discriminatory inequality on the same class of property."); *McCluskey v. Sparks,* 80 Ariz. 15, 19–20, 291 P.2d 791, 794 (1955) (Injunction is appropriate remedy when it is "clearly shown that assessments are the result of systematic and intentional conduct.").

More importantly, in *Zeigler* this court previously held that section 1983 claims are not subject to dismissal for failure to exhaust state administrative remedies. There, we said:

The holding in *Felder* clearly demonstrates that a state court may not condition a plaintiff's § 1983 rights upon the exhaustion of state administrative remedies. Accordingly, we hold that plaintiffs' § 1983 claims in the instant case were not subject to dismissal because of the named plaintiffs' failure to exhaust their state administrative remedies.

*Zeigler,* 162 Ariz. at 83, 781 P.2d at 60. We see no valid reason to create an exception to this rule in cases involving a section 1983 class action challenge to an unconstitutional state taxing scheme.

Furthermore, the reasons we stated for requiring administrative exhaustion of refund claims, *see Estate of Bohn,* 174 Ariz. at 245–46, 848 P.2d at 330–31, are not applicable to taxpayers section 1983 claims for injunctive relief. It is one thing to require resort to the administrative process to seek an individual refund; it is quite another to require a class injured by the administration of an unconstitutional tax scheme to seek redress in the first instance from those who are the very targets of section 1983 legislation. Thus, even if we were to follow *McNary,* it would not be applicable here. *McNary*'s exhaustion rule only applies where the state remedies are "plain, adequate, and complete." *McNary,* 454 U.S. at 116, 102 S.Ct. at 186. We conclude that in the case of the taxpayers' section 1983 class action challenge to the Arizona tax scheme, the administrative process is not adequate.

We reach this conclusion for several reasons. First, in the administrative process, an

ADOR hearing officer has already refused to consider a federal taxpayer's individual refund claim in light of the United States Supreme Court's holding in *Davis*.[6] Instead, ADOR has stated "[w]hether Arizona's taxing scheme violates the intergovernmental tax immunity doctrine and 42 U.S.C. § 111 [sic] and is therefore unconstitutional is left for tribunals empowered to pass judgment on such questions." Consequently, this section 1983 class action challenge to the constitutionality of the Arizona tax scheme will, in the long run, significantly reduce the inconvenience, inefficiency, delay, and expense involved in countless futile, separate administrative actions. Second, because of our holding today that Arizona's tax scheme violates the intergovernmental tax immunity doctrine, the taxpayers may be entitled to injunctive relief to prevent the continued discriminatory tax treatment of federal employees. No injunction may be granted in the administrative process. Consequently, the tax court correctly held that the taxpayers' failure to exhaust state administrative remedies did not deprive it of jurisdiction to consider and resolve their claims for declaratory and injunctive relief and damages under 42 U.S.C. section 1983.

### 3. Response to Dissent

Several words about the dissent. The dissent argues that it is "dichotomous" to exempt section 1983 claims from administrative exhaustion based on the ADOR's inability to decide constitutional questions, when we held in *Bohn* that administrative refund claims must be exhausted. As we point out above, however, there is a significant difference between the administrative refund claims in *Bohn* and the section 1983 class action claims in this case. In *Bohn*, the taxpayers did not appeal the dismissal of their section 1983 claims. Thus, *Bohn* did not involve the issue of administrative exhaustion of section 1983 claims. Because the statutory administrative process specifically provided a method for paying the taxpayers refund claims, we held in *Bohn* that administrative exhaustion was required as a pre-condition to suit in the tax court.

Here, however, unlike *Bohn*, the federal taxpayers class action also challenges the continued enforcement of a tax scheme that unconstitutionally discriminates against federal employees. Upon remand, the taxpayers may be entitled to injunctive relief to prevent the state from continuing to enforce the unconstitutional provisions of A.R.S. section 43–1001(2). Because the ADOR cannot grant injunctive relief to the taxpayers and because the ADOR has already refused to apply constitutional doctrines to the one federal taxpayer in this case who has attempted to exhaust his administrative remedies, the administrative process does not provide an adequate remedy at law.

The dissent also contends that it is illogical to deem the administrative claims process inadequate based on the ADOR's inability to issue an injunction, because by statute even the courts are generally denied the power to "prevent or enjoin the collection of any tax." The dissent, however, concedes that the only exception to this rule exists where the court finds a taxing scheme unconstitutional. We have, of course, in this opinion reached that conclusion. Consequently, because the tax court clearly has the power to enjoin the continued enforcement of section 43–1001(2), there is nothing illogical in holding that administrative remedies are inadequate because administrative bodies do not have the same power.

The dissent further argues, for essentially three reasons, that the majority's approach creates bad precedent. First, the decision gives Arizona taxpayers the right to ignore state administrative exhaustion requirements when filing section 1983 claims in state courts. Second, Arizona taxpayers can now file their claims directly in federal courts because the Arizona Court of Appeals has deemed state remedies inadequate. Third, the tax court will have to assume the role of ADOR in "reviewing refund claims under the guise of section 1983 without the benefit of any factual record."

Unfortunately, this misconstrues our holding. Following *Bohn*, we held above that the taxpayers' refund claims—as distinguished

---

**6.** *See In re Allen*, No. 932328–B (Ariz. Dept. of Revenue Dec. 13, 1993).

from their section 1983 claims for declaratory and injunctive relief and damages—are subject to administrative exhaustion. Thus, contrary to the dissent, refund claims "under the guise" of section 1983 are not exempt from the administrative exhaustion requirements. The taxpayers' class action claims under 42 U.S.C. section 1983 for declaratory and injunctive relief and damages for the administration of an unconstitutional tax scheme, however, are different. In these particular circumstances, the taxpayers' failure to exhaust state administrative remedies does not deprive the tax court of jurisdiction to hear and determine the taxpayers' section 1983 claims. And, although the dissent argues that the court in *McNary* did not intend to allow taxpayers filing section 1983 claims in the federal court to circumvent the exhaustion requirement because of inadequate administrative remedies, that is precisely what *McNary* says. *McNary* requires exhaustion as a pre-condition to asserting a section 1983 tax claim in federal court only where the state remedies are "plain, adequate, and complete." *McNary*, 454 U.S. at 116, 102 S.Ct. at 186. Here, for the reasons mentioned above, the state remedies are not "plain, adequate and complete."

## C. The Federal Tax Code "Pick Up" Provisions

The federal tax code draws a distinction between "employers' contributions" and "employees' contributions" to a qualified pension plan. *See Howell v. United States*, 775 F.2d 887, 887 (7th Cir.1985). Although it makes no difference to the employer how such contributions are treated, the tax consequences to the employee are significant, depending on whether the pension plan contribution is considered an employees' contribution or an employers' contribution. Thus, the employer is treated the same whether it pays an employee a salary of $30,000 and contributes an additional $3,000 to a pension plan on the employees' behalf or instead pays $33,000 to an employee who in turn contributes $3,000 to a pension plan. *See id.* In both cases the employer deducts the entire $33,000 as a business expense. If the contribution to the pension plan is made by the employer, however, the tax to the employee on the contri-

bution is deferred until retirement. But if the contribution is made by the employee, the amount of the contribution is presently taxable. This distinction between employers' contributions and employees' contributions has been described as one example of the "dominance of form over substance in the [federal] tax code." *Id.*

Rather than simplifying the matter by treating both types of contributions the same, in 1974, Congress passed 26 U.S.C. section 414(h)(2). This statute allows state and local government employers (but not private employers) to control the tax consequences to employees of their qualified pension plan contributions. *See Howell*, 775 F.2d at 888. Section 414(h)(2) provides that if a state or local government's pension plan contributions " 'are designated as employee contributions but [the] employing unit picks up the contributions, the contributions so picked up shall be treated as employer contributions.' " *Id.* (quoting 26 U.S.C. § 414(h)(2)). Thus, through the device of the public employer electing to "pick up" the employees' contribution to a qualified pension plan, employees' contributions to such plans are treated the same as employers' contributions. *See id.*

## D. The Arizona Tax Scheme

During the time relevant to this case, a resident's "gross income" for Arizona income tax purposes was defined as his "federal adjusted gross income for the taxable year, computed pursuant to the Internal Revenue Code." A.R.S. § 43–1001(2) (1980). This is the starting point for determining a taxpayer's Arizona adjusted gross income and taxable income. *See* A.R.S. §§ 43–1001(1), (2), (11) (1980) (amended Supp.1993) (definitions); A.R.S. §§ 43–1021 through 43–1026 (1980) (amended Supp.1993) (adjustments to Arizona gross income); A.R.S. §§ 43–1041 through 43–1043 (1980) (amended Supp.1993) (deductions and personal exemptions).

Effective May 3, 1985, the legislature adopted "pick-up" provisions authorized by 26 U.S.C. section 414(h) (1988). According to these provisions, after approval by the Internal Revenue Service, electing state and local

governmental employers would "pick up" the retirement contributions that would otherwise normally have been paid by their employees. Such contributions were then excluded from the employee's gross income for federal income tax purposes. *See* A.R.S. § 38–781.04(D) (1985) (amended Supp.1993) (state retirement system); *see also* A.R.S. § 38–810(D) (1985) (amended Supp.1993) (elected officials retirement plan, effective August 7, 1985); A.R.S. § 38–892 (Supp. 1993) (corrections officers' retirement plan, effective July 1, 1986). The combined effect of A.R.S. section 43–1001(2) and the "pickup" provisions covering most state and local retirement plans was to exempt the affected state and local employees' retirement contributions from both federal and Arizona income taxation.

Unlike the Arizona legislature, however, the United States Congress has not enacted a "pick-up" provision excluding from federal gross income federal employees' contributions to their retirement plans. Accordingly, federal retirement plan contributions are automatically included in federal employees' Arizona gross income. Because no provision of Arizona law subtracts federal employees' retirement contributions from their Arizona gross income in computing Arizona taxable income, federal retirement contributions are fully subject to Arizona income taxation. Further, because no provision of Arizona law adds back "picked-up" state or local employee retirement plan contributions in determining Arizona taxable income, the latter contributions escape Arizona income taxation entirely.

Additionally, during the years in question, A.R.S. section 43–1022(2) subtracted from Arizona gross income all "[c]ontributions made to the state retirement system, the judges' retirement fund, the public safety personnel retirement system or a county or city retirement plan." [7] This exemption excluded from Arizona gross income all contributions to all state and local retirement plans not "picked up" by the employer pursuant to 26 U.S.C. section 414(h). Section 43–1022,

however, contains no similar gross income subtraction for contributions made by federal employees to federal retirement plans.

## 1. Legal and Procedural Background

In ruling on the taxpayers' motion for declaratory judgment, the tax court made the following findings and conclusions:

(1) Federal, Arizona, and local Arizona governmental employees' contributions to their respective retirement systems (or plans) are part of their compensation.

(2) Social Security retirement benefits make up a part of the retirement benefits which some, but not all, state and local employees can look forward to receiving at retirement.

(3) Social Security retirement benefits make up a part of the retirement benefits which some, but not all, federal employees can look forward to receiving at retirement.

(4) In comparing the current financial burden on federal, state, and local governmental employees of contributing toward their respective retirement benefits, it is necessary to take Social Security benefits and taxes (or contributions) into consideration.

(5) No generalization can be made as to whether the retirement benefits of any particular group of federal employees are likely to be better than those of a similarly situated group of state or local employees.

Because the tax court ultimately held that its rulings would be applied prospectively only and that in consequence no refunds would be ordered, the tax court did not elaborate on the way in which Social Security benefits and taxes would be taken into consideration.

On the underlying immunity issue, the tax court declared the law as follows:

A.R.S. § 43–1022(2) violates the federal constitutional doctrine of intergovernmental tax immunity, because (a) it gives preferential treatment to the class or group consisting of Arizona state and local governmental employees who make mandato-

---

**7.** In two stages, the Arizona Legislature deleted the exemption for contributions to state and local employees retirement plans. *See* Act of June 29, 1989, 1989 Ariz.Sess.Laws 1596, 1604–06; Act of May 21, 1991, 1991 Ariz.Sess.Laws 529, 536–37.

ry contributions to state or local retirement systems which do not qualify for "pick-up" (and therefore exclusion from [federal adjusted gross income]) of those contributions and (b) it does not give similar treatment to federal governmental employees residing in Arizona who make mandatory contributions to federal retirement systems which the federal government has chosen not to make excludable from [federal adjusted gross income].

. . . .

IT IS FURTHER ORDERED declaring that except to the extent that A.R.S. § 43–1022(2) operates to discriminate against Plaintiffs, the Arizona scheme of income taxation of contributions to federal, state, and local governmental retirement plans does not violate the federal constitutional doctrine of intergovernmental tax immunity. Any disparity in federal and Arizona income tax treatment of such contributions resulting from the application of I.R.C. § 414(h) and related provisions of federal law does not fall within the scope of *Davis.*

### 2. Validity of A.R.S. Sections 43–1001(2) and 43–1022(2) Under 4 U.S.C. Section 111

The parties' opposing arguments are based on two statutes, A.R.S. sections 43–1001(2) [8] and 43–1022(2). The taxpayers contend that A.R.S. section 43–1001(2) illegally discriminates against federal employees. They argue that it is discriminatory because it excludes from Arizona gross income the "picked up" retirement plan contributions of state and local employees to state and local plans, while including in gross income the contributions of federal employees to federal retirement plans. Defendants dispute this. Defendants also argue that the tax court erred in ruling that because A.R.S. section 43–1022(2) subtracted from Arizona gross income the non-"picked-up" retirement plan contributions of state and local employees to state and local plans, the statute illegally discriminated against federal employees.

### a. A.R.S. Section 43–1001(2)

■ As we explained previously, through 26 U.S.C. section 414(h), the United States Congress chose to exclude from gross income for federal income tax purposes employee contributions to state or local governmental retirement plans that the governmental employer elects to "pick-up." Section 414(h)(2) states in part:

> [I]n the case of any plan established by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing, where the contributions of employing units are designated as employee contributions but where any employing unit picks up the contributions, the contributions so picked up shall be treated as employer contributions.

Congress has not chosen to extend this effective deferral of federal taxes to employees of the federal government. This discrimination within the federal income tax scheme does not violate 4 U.S.C. section 111 or the intergovernmental tax immunity doctrine. That doctrine prohibits only state discrimination against employees of the United States, not discrimination by the United States in favor of state employees.

Arizona has chosen, however, to designate as its residents' "Arizona gross income," their federal adjusted gross income determined pursuant to the I.R.C. *See* A.R.S. § 43–1001(2). The result is that state and local employees' contributions to section 414(h) retirement plans are not only excluded from their gross income for federal tax purposes, but also, automatically excluded from their gross income for state tax purposes. At the same time, federal employees' contributions to federal retirement plans are included in their gross income for federal income tax purposes, and thus included in their gross income for Arizona income tax purposes.

■ The tax court held that this disparate Arizona income taxation of federal, state, and local employees' contributions to their re-

---

**8.** A.R.S. § 43–1001(2) (1980) states "'Arizona gross income' of a resident individual means his federal adjusted gross income for the taxable year, computed pursuant to the Internal Revenue Code." (Footnote omitted.)

spective retirement systems resulted from the application of section 414(h) and related provisions of federal law. Consequently, the tax court concluded that the Arizona statute did not violate the doctrine of intergovernmental tax immunity. Defendants make the same argument on appeal. We disagree.

Both the tax court and defendants err in relying upon "the source of the pay or compensation" to extricate Arizona's scheme for taxation of federal, state, and local retirement contributions from the prohibited category of discrimination. The thrust of defendants' reasoning is found in their statement that "[t]he only obstacle to the exclusion of federal plan contributions [from Arizona income taxation] is the federal employer, who has refrained from acting to 'pick up' contributions." Their implicit major premise, which is incorrect, is that Arizona had no choice other than to adopt federal adjusted gross income without modification as part of the state income tax scheme.

Contrary to the tax court's ruling and defendants' reasoning, however, it was ultimately Arizona legislative action that imposed the discriminatory tax scheme. In other words, it was not federal legislative action, but state legislative action that caused state and local retirement contributions to be exempted from Arizona income taxation while federal retirement contributions were not. No provision of law to which we are cited required Arizona to adopt federal adjusted gross income in determining Arizona taxable income.

Further, as we observe above, the Arizona income tax scheme uses federal adjusted gross income only as its starting point. In arriving at Arizona adjusted gross income, some sixteen items of income are added to Arizona gross income, and twenty are subtracted from it. *See* A.R.S. §§ 43–1021 (Supp.1993) (additions to Arizona gross income); A.R.S. § 43–1022 (Supp.1993) (subtractions from Arizona gross income). For example, Arizona adds to gross income a taxpayer's interest income from non-Arizona political subdivisions, which the I.R.C. excludes from federal income taxation. *See* A.R.S. § 43–1021(4). Similarly, Arizona subtracts from Arizona gross income all interest

received on United States government obligations, and portions of social security benefits and railroad retirement benefits, which the federal government can tax but states cannot. *See Memphis Bank & Trust Co. v. Garner*, 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983); 31 U.S.C. § 3124(a) (1988); 45 U.S.C. § 231m(a) (1988); A.R.S. §§ 43–1022(6), (17) (Supp.1993).

Indeed, as we stated above, after the taxpayers filed this action, the Arizona legislature acted to eliminate discriminatory taxation as between federal employees and those state and local employees whose retirement plans have not taken advantage of the "pickup" authorized by 26 U.S.C. section 414(h). *See* Act of June 29, 1989, 1989 Ariz.Sess. Laws 1596, 1604–06; Act of May 21, 1991, 1991 Ariz.Sess.Laws 529, 536–37. Whatever the treatment accorded by federal law to federal and state retirement plan contributions, Arizona was not compelled to discriminate against federal employees.

The single case on which defendants rely, *Howell v. United States*, 775 F.2d 887 (7th Cir.1985), does not support their position. *Howell* holds only that a state employee's ability to exclude payments to a state retirement plan from his federal gross income for a given year depends on whether his employer in fact designated the contributions as "picked up" pursuant to section 414(h) for that year. *Id.* at 890. Contrary to defendants' implicit argument, *Howell* did not hold that a state is required to accept and implement for state income tax purposes all other employers' elections under section 414(h).

What defendants' reasoning ultimately boils down to is that indirect discriminatory taxation that is not specifically intended to operate as such, is not discriminatory at all. Defendants cite no authority that would support this idea in the tax arena, and we are aware of none. The tax court erred in holding that A.R.S. section 43–1001(2) did not violate the governmental immunity doctrine.

**b. A.R.S. Section 1022(2)**

■ The tax court held that former section 43–1022(2) violates the doctrine of intergovernmental tax immunity because it pro-

**16**

vides a subtraction from Arizona gross income for contributions to non-section 414(h) state and local retirement plans, but provides no corresponding subtraction for contributions to federal retirement plans. We agree with the tax court.

Defendants first attack the tax court's ruling on the ground that A.R.S. section 43–1022(2) does not discriminate against federal employees. Although their argument is involved, it again comes down to the proposition that it is the limited scope of the federal tax benefits granted under 26 U.S.C. section 414 that results in disparate treatment, rather than A.R.S. section 43–1022(2).

Defendants' argument is again premised on the mistaken view that the discriminatory taxation of federal employees occurs only because Congress has chosen not to extend the federal tax benefits of section 414(h) to federal employees. The disparate treatment of the two groups, however, actually results from Arizona's decision to exclude from state income taxation all retirement contributions to state and local plans that do not participate in the employer pick-up scheme provided by section 414(h). Arizona was neither compelled to extend this advantage to state and local employees, nor to deny the same advantage to similarly situated federal employees.

Defendants next assert that because of the agreements by which most state and local employee groups have become participants in the federal social security system, see A.R.S. § 38–701 through 38–781.44 (1985 & Supp. 1993),[9] social security is actually an integral part of the retirement scheme for such employees. Defendants contend that when one takes into account the required taxable contributions to the federal social security system made by such state and local employees, Arizona income taxation of federal employees' retirement contributions is "comparable"

to that of state and local employees, and therefore legal. Defendants urge:

> [M]ost state and local employees contribute significantly more of their wages to government plans than federal employees while the tax burden is comparable. In general, when Social Security tax is included, the vast majority of state employees pay tax on approximately 6% of contributions, while the vast majority of federal employees pay tax on 7%.
>
> Government employee contributions are not available to the employee until termination or retirement. Since most Arizona state and local employees must contribute a far greater percentage to Social Security and a state or local retirement plan than federal employees, a state tax scheme that taxes a comparable percentage for both classes of employees is not discriminatory.

Similarly, defendants argue that because of 26 U.S.C. section 414(h), and the difference in the economic burdens of funding retirement systems, constitutionally significant differences exist between federal employees on the one hand, and state and local employees on the other. According to defendants, these differences validate the exemption of state and local retirement plan contributions from Arizona income taxation under A.R.S. section 43–1022(2). *See Davis,* 489 U.S. at 816, 109 S.Ct. at 1508 ("[T]he relevant inquiry is whether the inconsistent tax treatment is directly related to, and justified by, 'significant differences between the two classes.'") (quoting *Phillips Chemical Co. v. Dumas Indep. Sch. Dist.,* 361 U.S. 376, 383, 80 S.Ct. 474, 479, 4 L.Ed.2d 384 (1960)). In any event, argue defendants, any illegal discrimination is confined to minor subclasses of federal employees and state and local employees, and this discrimination should not

**9.** 42 U.S.C. section 418 (1988) permits states and their political subdivisions to join the federal social security system. In 1951, the Arizona Legislature adopted provisions which are currently codified as A.R.S. sections 38–701 through 38–781.44 (1985 & Supp.1993) authorizing the state and its political subdivisions to enter into agreements pursuant to 42 U.S.C. section 418. *See* Act of March 28, 1951, 1951 Ariz.Sess.Laws 349. Arizona voters later repealed an existing

retirement system for state employees, and the state entered into an agreement with the U.S. Government to extend social security participation to state employees retroactive to January 1, 1951. As of April 20, 1983, states and their political subdivisions which have agreed to participate in the federal social security system cannot withdraw from that agreement, though non-participating governmental units may still be added.

cause A.R.S. section 43–1022(2) to be invalidated entirely.

■ Defendants' analyses are contrary to federal law as previously interpreted by the Supreme Court. A state's rationale for discriminatory treatment of persons who deal with the federal government must be rejected if, when the rationale is applied evenhandedly, it would not produce the disparity the state's law creates in practice. *See Phillips Chemical,* 361 U.S. at 384–85, 80 S.Ct. at 479–80 (rejecting proffered rationale for State's unfavorable tax treatment of lessees of federal property, because evenhanded application of the rationale would have resulted in inclusion of some lessees of state property in the disfavored class as well). In *Davis,* the Court employed the same analysis in rejecting contentions similar to those made by defendants here:

> [T]he State argues that its retirement benefits are significantly less munificent than those offered by the Federal Government, in terms of vesting requirements, rate of accrual, and computation of benefit amounts. The substantial differences in the value of the retirement benefits paid the two classes should, in the State's view, justify the inconsistent tax treatment.
>
> Even assuming the State's estimate of the relative value of state and federal retirement benefits is generally correct, we do not believe this difference suffices to justify the type of blanket exemption at issue in this case. While the average retired federal civil servant receives a larger pension than his state counterpart, there are undoubtedly many individual instances in which the opposite holds true. A tax exemption truly intended to account for differences in retirement benefits would not discriminate on the basis of the source of those benefits, as Michigan's statute does; rather, it would discriminate on the basis of the amount of benefits received by individual retirees.

489 U.S. at 816–17, 109 S.Ct. at 1508 (citation omitted).

The record in this case reflects that A.R.S. section 43–1022(2) exempts all Arizona state and local employees' contributions to retirement plans. Even those state and local employees who contribute from six to seven percent of their salaries and who are not subject to the social security system are exempted. The record also establishes that federal employees who participate in the Civil Service Retirement System, who contribute seven to eight percent of their salaries and nothing to the social security system, are nevertheless under Arizona law fully taxed on their Civil Service retirement contributions. If the rationale underpinning defendants' social security explanation for the discriminatory taxation were evenhandedly applied, some state employees would be subject to state income taxation. In other words, to sustain the statute under this argument, the retirement contributions of those state employees whose combined burden of social security and state retirement plan contributions was the same as that of federal employees should also be taxed. But, they are not.

Thus, the tax court correctly declared that former A.R.S. section 43–1022(2) violated the intergovernmental tax immunity doctrine and was unenforceable.

## E. Tax Court's Refusal to Enjoin Continued Enforcement After Invalidating A.R.S. Section 43–1022(2)

■ The taxpayers also argue that the tax court erred in refusing to enjoin further enforcement of A.R.S. section 43–1022(2) once it had declared the statute violative of the intergovernmental tax immunity doctrine. They imply that in a case brought under 42 U.S.C. section 1983, the finding of a violation requires injunctive relief whether or not the traditional prerequisites for injunctive relief are present. The applicable case law does not support this view. The traditional requirements for obtaining injunctive relief, including making a showing of irreparable injury, also apply in section 1983 litigation. *Allee v. Medrano,* 416 U.S. 802, 814, 94 S.Ct. 2191, 2199–2200, 40 L.Ed.2d 566 (1974). *See, e.g., McCollum v. City of Powder Springs,* 720 F.Supp. 985 (N.D.Ga.1989).

Here, the tax court denied the taxpayers' request for injunctive relief. The court was influenced by its determination that only

A.R.S. section 43–1022(2) [10] unconstitutionally discriminated against the taxpayers and that, in any event, the tax court's ruling was not retroactive. As we have held, however, both A.R.S. sections 43–1001(2) and 43–1022(2) contravene the intergovernmental tax immunity doctrine. And, the United States Supreme Court recently held in *Harper* that, as a matter of federal law, *Davis* is to be applied retroactively. *Harper*, 509 U.S. at ——, 113 S.Ct. at 2513. We accordingly vacate the tax court's ruling on the taxpayers' request for injunctive relief and remand for further consideration in light of our holding that A.R.S. section 43–1001(2) violates the doctrine of intergovernmental tax immunity.

### F. Tax Court's Refusal to Declare Prospective Equality

The taxpayers further contend that the tax court erred in refusing to enjoin further enforcement and collection of Arizona income taxes on federal employees' retirement contributions or to declare that federal employees must in the future receive the same Arizona income tax exclusions as state and local employees. We disagree. Complying with the mandate of equal treatment may be accomplished by withdrawing benefits from the favored class as well as by extending benefits to the excluded class. *Davis*, 489 U.S. at 817–18, 109 S.Ct. at 1508–09. The Arizona Legislature has already complied in part with that mandate by amending A.R.S. section 43–1022 in 1989 and 1991 to eliminate any income tax exclusion for contributions to state or local retirement plans. It is free to do likewise as to the discriminatory effect of A.R.S. section 43–1001(2). The status of legislative efforts to comply with the mandate for equal treatment may be considered by the tax court on remand in connection with the taxpayers' application for injunctive relief.

### G. Qualified Immunity of Individual Defendants on Section 1983 Damages Claim

The tax court granted summary judgment in favor of the individual defendants on the taxpayers' damage claims under 42 U.S.C. section 1983, holding that they were entitled as a matter of law to qualified immunity. The taxpayers challenge this ruling as error on three grounds. First, citing *Tower v. Glover*, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984), they contend that a defense of qualified immunity from a section 1983 damages claim may be recognized only if it existed under the common law in 1871, when section 1983 was first adopted, on behalf of the particular variety of official involved.

The taxpayers, however, misconstrue *Tower*. There the appellee was a public defender who sought dismissal of his former client's damages complaint based solely on *absolute* immunity. The Supreme Court concluded from a review of the common law that public defenders have no such immunity for intentional misconduct of the type alleged. *Id.* at 916, 104 S.Ct. at 2822. The *Tower* opinion did not address whether a *qualified* immunity might be available in that case.

Furthermore, the United States Supreme Court has refuted the taxpayer's argument. Earlier, in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See also Carroll v. Robinson*, 178 Ariz. 453, 456, 874 P.2d 1010, 1013 (App.1994) (qualified immunity protects state officers and employees from liability for good faith exercise of discretionary authority). In *Anderson v. Creighton*, 483 U.S. 635, 642–43, 107 S.Ct. 3034, 3040–41, 97 L.Ed.2d 523 (1987), the Court later emphasized that its doctrine of qualified immunity had been formulated for broad, general application, stating:

> Although we have in narrow circumstances provided officials with an absolute immuni-

---

**10.** This statute was repealed by the legislature after the court held it invalid. *See* note 6, *supra*

at 1604–06.

ty ... *we have been unwilling to complicate qualified immunity analysis by making the scope or extent of immunity turn on the precise nature of various officials' duties or the precise character of the particular rights alleged to have been violated. An immunity that has as many variants as there are modes of official action and types of rights would not give conscientious officials that assurance of protection that it is the object of the doctrine to provide.*

(Emphasis added) (citation omitted). *Cf. Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) (rejecting absolute immunity claim as lacking basis in common law). And, in *Buckley v. Fitzsimmons*, —— U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the Court made it even clearer that reference to the status of the common law around 1871 is associated with claims of absolute immunity, rather than qualified immunity.

The taxpayers have cited no authority in support of their contention that even qualified immunity from section 1983 damages liability must find its roots in the common law of the late 19th century. Our independent research also reveals none. Thus, the individual defendants are entitled to assert the defense of qualified immunity.

The taxpayers' next contention is founded on the established principle that section 1983 qualified immunity from damages liability for official acts extends only to those acts that are truly discretionary. *See Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). They assert that the individual defendants argued below that they lacked discretion "to do other than violate federal law." The taxpayers urge that the individual defendants thereby foreclosed themselves from invoking an immunity that presupposes their acts were discretionary. We disagree.

The individual defendants took the position below that they had *no discretion other than* to enforce the law. In our view, their determination of what law bound them in the exercise of their official duties, and what it required them to do, was necessarily discretionary. This is so even though the individual defendants viewed themselves as lacking discretion to decline to follow the law once they determined what it required. The individual defendants were thus entitled to invoke the defense of qualified immunity in response to the taxpayers' damages claims.

The taxpayers further contend:

When *Davis* was announced in 1989, the individual defendants had actual knowledge that their conduct was illegal. They knew that federal law mandated equality in State taxation, yet they enforced a tax system which they knew was inherently unequal. Officials with knowledge that the laws they enforce are invalid have no right to assert a qualified immunity defense.

But, the principal case on which they rely, *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), undermines their contention. Speaking for the Court in *Anderson*, Justice Scalia stated:

[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.

The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.... It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particular-

ized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

483 U.S. at 639–40, 107 S.Ct. at 3038–39 (citations omitted).

It is true, as the taxpayers point out, that since 1939 it has been settled that states may impose only nondiscriminatory taxes on the compensation of United States employees and that nothing has changed to render that principle unclear. But the retroactivity of *Davis*, even on facts closely similar to those before the *Davis* Court, remained unsettled until *Harper*. Similarly, the application of 4 U.S.C. section 111 to employee retirement plan contributions cannot be said to have been "clearly established law" until now. The tax court correctly granted summary judgment for the individual defendants on the taxpayers' section 1983 damages claim.

### H. Attorneys' Fees and Costs on Appeal

■ The taxpayers request attorneys' fees and costs on appeal. Attorneys' fees and costs are properly awarded under A.R.S. section 12–348 (1992) and not as a percentage of the common fund. Thus, upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure, we award attorneys' fees and costs to the taxpayers pursuant to section 12–348.

### IV. CONCLUSION

Because of our resolution of the dispositive issues on this appeal, we need not consider: (1) whether the tax court erred in certifying a taxpayer class; [11] (2) whether the tax court erred in adjudicating the existence of subclasses in the taxpayer class; (3) whether five subclasses are necessary to allocate the appropriate amount of refund if a retroactive

remedy is provided; (4) whether the tax court erred in failing to award the taxpayer class a refund of past Arizona income tax overpayments; (5) whether the state was judicially precluded from asserting that the taxpayer class has no right to a refund; or (6) the extent to which, if at all, social security contributions must be considered in determining the appropriate amount of any retroactive refund.

Affirmed in part; reversed in part; vacated in part; remanded for further proceedings consistent with this opinion.

GRANT, P.J., concurs.

VOSS, Judge, concurring in part, dissenting in part.

I concur with the majority's opinion with one exception: I believe that section 1983 (§ 1983) challenges to state taxing schemes *are* subject to administrative exhaustion. I view this position as the logical extension of our holding in *Bohn* and one which is consistent with the approach taken by virtually all states that have addressed the question. *See, e.g., Neff v. New Mexico, Through Taxation and Revenue Department*, 116 N.M. 240, 861 P.2d 281 (App.1993); *Zarda v. Kansas*, 250 Kan. 364, 826 P.2d 1365 (1992), *cert. denied*, 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 566 (1992); *Dean v. Kansas*, 250 Kan. 417, 826 P.2d 1372 (1992), *cert. denied sub nom.*, *Zarda v. Kansas*, 504 U.S. 973, 112 S.Ct. 2941, 119 L.Ed.2d 566 (1992); *Boughton Trucking and Materials, Inc. v. County of Will*, 229 Ill.App.3d 576, 171 Ill.Dec. 299, 593 N.E.2d 1119 (1992); *Bancroft Information Group, Inc. v. Comptroller of the Treasury*, 91 Md.App. 100, 603 A.2d 1289 (1992); *Nutbrown v. Munn*, 311 Or. 328, 811 P.2d 131 (1991), *cert. denied*, 502 U.S. 1030, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992); *Hogan v. Musolf*, 163 Wis.2d 1, 471 N.W.2d 216 (1991), *cert. denied*, 502 U.S. 1030, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992).

I agree with the reasoning of the aforementioned cases because I believe that the U.S. Supreme Court's ruling in *McNary* ex-

---

11. Appellees' cross-appeal challenged this certification only to the extent it was in aid of the

taxpayers' claims for damages or refunds.

cludes § 1983 challenges to state tax systems from the non-exhaustion rule of *Felder*. In *McNary*, the Court made taxpayer suits under § 1983, for all intents and purposes, the exclusive responsibility of state tribunals. The Court stated:

> [W]e hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights *by state remedies,* provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court.

454 U.S. at 116, 102 S.Ct. at 186 (emphasis added) (footnote omitted). Thus, under *McNary,* taxpayers' § 1983 claims are to be fully adjudicated in state courts and thereafter review is to be sought from the U.S. Supreme Court. In light of this, taxpayer suits under § 1983 are arguably no different than any other tax claims (whether based on state law, federal law, or the Constitution), all of which even the majority agrees are subject to the exhaustion requirement under *Bohn.* 174 Ariz. at 250, 848 P.2d at 335 (exhaustion of administrative remedies is not optional even if constitutional doctrines cannot be applied by the Department). Therefore, I would require administrative exhaustion for all taxpayer claims.

The majority, however, finds the cases that have taken this approach unpersuasive (particularly *Hogan* and *Nutbrown* ) and cites *Murtagh,* 535 Pa. 50, 634 A.2d 179, as announcing the better reasoned rule. The Pennsylvania Supreme Court in *Murtagh* reached its result based on the conclusion that "the principle of comity that causes a federal court to refrain from exercising jurisdiction over section 1983 tax ... cases has no relevance to [such cases] in state court...." *Id.* at 185. I disagree. In *McNary,* the Court agreed 9–0 in the judgment, but was divided 5–4 as to the basis for that judgment. The majority based its decision on principles of comity while the concurring minority preferred to apply the exhaustion doctrine. The one thing upon which all of the Justices in *McNary* agreed, however, was that special, obvious reasons existed justifying the policy of federal noninterference with state tax collection and administration. The Court stated:

> If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law.... Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

*McNary,* 454 U.S. at 108–09 n. 6, 102 S.Ct. at 182 n. 6; *Id.* at 137–38 n. 27, 102 S.Ct. at 197 n. 27 (Brennan, J., concurring in the judgment) (quoting *Perez v. Ledesma,* 401 U.S. 82, 128 n. 17, 91 S.Ct. 674, 699 n. 17, 27 L.Ed.2d 701 (1971) (Brennan, J., concurring in part, dissenting in part)). I believe that these reasons are equally relevant and applicable to state court interference in the administrative review of tax claims. As the Wisconsin Supreme Court noted in *Hogan:*

> It would be no less disruptive of the state's internal economy and administrative tax procedures for a state court to act under sec. 1983 and suspend the usual tax collection and refund procedures of the state than it would be for a federal court to do so. In addition, regardless of which court interferes with the state's fiscal operations, tax officials would be improperly denied the opportunity to rectify any alleged impropriety before being subject to a sec. 1983 action.

471 N.W.2d at 222.

The majority, however, contends that exempting § 1983 claims from the exhaustion requirement is proper and necessary because: (1) *McNary* does not apply where administrative remedies are inadequate; (2) states that require exhaustion for § 1983 claims, do so on the basis of explicit language which is lacking in our revised statutes; (3) *Nutbrown* and *Hogan* are inapplicable and/or poorly reasoned; (4) there is no valid reason to create an exception to *Zeigler;* and (5) permitting taxpayers to forego the administrative process in bringing their § 1983 claims will reduce inconvenience, inefficiency, delay, and expense. I am not persuaded by

any of these arguments and address each in turn.

The majority first finds *McNary* and the cases which rely on it inapplicable because the administrative remedies available to taxpayers in Arizona are not "adequate." In the majority's view, administrative remedies in Arizona are inadequate because the tax board lacks the ability to declare tax statutes unconstitutional or enjoin their enforcement. There are fundamental flaws in this reasoning. First, it is dichotomous to exempt § 1983 claims from exhaustion based on the tax board's inability to decide questions of constitutionality when we have already held that the board's inability provides no exemption for constitutional claims arising under sections other than § 1983. *See Bohn,* 174 Ariz. at 250, 848 P.2d at 335.

Similarly, it is illogical to deem the administrative claims process inadequate based on the tax board's inability to issue an injunction when even the courts are, as a general rule, denied that power by statute. A.R.S. § 42-124(B)(1) (1991) ("No injunction ... may issue in an action in any court in this state ... to prevent or enjoin the collection of any tax...."). The only exception to this statute is where the court finds the taxing scheme unconstitutional [12]—a finding which the tax board cannot make. Thus, the tax board's inability to issue injunctions is simply a natural consequence of its inability to rule on the constitutionality of a tax. Since we do not excuse exhaustion based on the latter, it makes no sense to obviate the requirement based on the former when the two are so tightly intertwined.

But even if the majority is correct in deeming Arizona's administrative tax claim remedies inadequate on these bases, the majority's holding that this inadequacy makes *McNary* and its progeny inapplicable to this case is simply wrong.[13] The majority errs in its assertion that "the *McNary* analysis re-

quired only that a taxpayer exhaust the state administrative procedures that are a precondition to suit in state court." *McNary* holds nothing of the kind. As quoted above, *McNary* holds that § 1983 challenges to state taxing systems are not to be entertained in federal courts *at all* unless "state remedies" are inadequate. By state remedies the Court clearly was not referring solely to administrative remedies as the majority suggests. The adequacy of state remedies under *McNary* is to be gauged by the entire range of administrative and judicial procedures available to claimants. As the Maryland Court of Special Appeals recognized, *McNary* "acknowledges the appropriateness of resolving § 1983 tax claims according to the procedures established by the states, including exhaustion of administrative remedies." *Bancroft Information,* 603 A.2d at 1296. Thus, I disagree with the majority focusing solely on the perceived shortcomings of the administrative process in their effort to make *McNary* inapplicable.

I also disagree with the majority's approach on this issue because it creates a bad precedent. Under the majority's holding, taxpayers in Arizona now have permission not only to ignore state administrative exhaustion requirements in bringing their § 1983 actions in state court, they also can persuasively argue that they are no longer barred by *McNary* from filing such claims directly in federal court because the Arizona Court of Appeals has deemed state tax remedies inadequate. I do not believe this is a desirable or correct result. The Court in *McNary* did not intend to give taxpayers the ability to circumvent state court jurisdiction based on inadequacies in administrative remedies.

The majority also holds that we should exempt § 1983 claims from administrative exhaustion requirements because "[t]he rule of exhaustion ... is usually applied [based

---

12. The cases cited by the majority as examples of injunctive relief in tax cases are clearly the exception to this general restriction and are both based on findings that the taxing schemes at issue were unconstitutional. I read these cases as standing for the proposition that injunctions in tax claims are only appropriate when the tax system being challenged is unconstitutional.

13. As for the majority's other objection to the applicability of *Hogan,* I agree that *Hogan*—insofar as it can be read as requiring complete appellate exhaustion of all state remedies prior to filing a § 1983 action—goes too far.

on] an express statutory mandate [and] Arizona has no express statute requir[ing] exhaustion." I disagree. A.R.S. section 42–115 sets the period for claims for credit or refunds as four years (per section 42–113) and provides that failure to begin an action for refund or credit within the time specified by this section is a bar against recovery of taxes by the taxpayer. Similarly, section 42–122 requires a taxpayer to file a petition within ninety days setting forth the reasons why a hearing correction or redetermination should be granted. "If the taxpayer does not file a petition for hearing, correction or redetermination within the period provided by this section, the amount determined to be due becomes final at the expiration of the period." A.R.S. § 42–122(B) (1991). Furthermore, appeals of decisions of the department to the state board, once decided, become final after thirty days and "[f]ailure to bring the action [as an appeal in superior court] within thirty days constitutes a waiver of the protest and *a waiver of all claims against this state arising from illegality in the tax, penalties and interest so paid.*" A.R.S. § 42–124(B) (1991) (emphasis added). We have previously held that failure to comply with a similar statute acts as res judicata with regard to administrative findings and bars collateral attack via § 1983 in superior court. *See Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 745 P.2d 617 (App. 1987). In light of that decision, I view these statutes as a sufficient mandate for administrative exhaustion.

The majority also relies on *Zeigler,* 162 Ariz. 77, 781 P.2d 54, to support its conclusion that exhaustion of administrative remedies should never apply to § 1983 actions. I do not read *Zeigler* and *Felder*—the case upon which *Zeigler* relies—so broadly, especially in light of *McNary. McNary* clearly creates an exception to *Felder* and should be the basis for our making a similar exception to *Zeigler.*

As for the majority's contention that its decision will reduce "inconvenience, inefficiency, delay, and expense" I must simply ask: For whom? Clearly, this decision will not provide such benefits to state tax officials who now find themselves subject to being haled at any time into either state or federal court to answer taxpayers' § 1983 complaints. Nor will this decision make life any easier for our trial courts. Instead, they likely will be faced with having to assume the role of the tax board in reviewing refund claims under the guise of § 1983 without the benefit of any factual record having been created prior to the case coming before them. It is exactly for these reasons that other states have chosen to require administrative exhaustion. "[T]he policies which motivated the Court's decision in *McNary* are equally applicable to sec. 1983 actions in state court." *Hogan,* 471 N.W.2d at 222. I agree and would adopt a policy requiring administrative exhaustion for all tax claims in Arizona.

### ORDER

The court has considered appellants' "Motion for Reconsideration and in the Alternative, Clarification of Limited Portions of Opinion," the response, and reply; appellees' "Motion for Reconsideration," the response, and reply; and appellants' application for award of attorneys' fees and costs, the objections to the award of attorneys' fees and costs, and the reply.

An error was made on page four of the opinion in the above-mentioned matter filed on September 13, 1994. On page four, paragraph six, we cited 26 U.S.C. section 414(h). The correct citation is 4 U.S.C. section 111.

 We deny appellant's request, pursuant to the "private attorney general" doctrine, for attorneys' fees in excess of the statutory limit established in A.R.S. section 12–348 (1992). The "private attorney general" doctrine is designed to encourage public interest litigation. *Arnold v. Department of Health Servs.,* 160 Ariz. 593, 609, 775 P.2d 521, 537 (1989). The doctrine is inapplicable here because appellants sought only to recover money for themselves; they did not seek to advance the public interest. *Cf. Corley v. Arizona Bd. of Pardons & Paroles,* 160 Ariz. 611, 613, 775 P.2d 539, 541 (App.1989). In fact, the state may have to impose burdens on the general public to raise the money that may be needed to satisfy appellants' claims.

We deny appellants' request for attorneys' fees pursuant to 42 U.S.C. section 1988 because appellants failed to request such fees in the briefs. Rule 21(c), Rules of Civil Appellate Procedure, provides that when "attorneys' fees are claimed pursuant to statute ... a request for allowance of attorneys' fees ... shall be made in the briefs on appeal." This court has interpreted that language to require the identification of the statute under which attorneys' fees are sought. *See City of Phoenix v. Superior Court*, 144 Ariz. 172, 177, 696 P.2d 724, 729 (App.1985). There is a good reason for this. Identifying the statute under which fees are sought enables the opposing party to respond to the request and allows us to address the issue in our decision. Here, appellants made a bare request for attorneys' fees. Despite this procedural defect, we awarded appellants' attorneys' fees under A.R.S. section 12-348. Nevertheless, appellants waived their claim for attorneys' fees under section 1988 because they did not, in their briefs, identify that statute. Therefore,

IT IS ORDERED granting the taxpayers' "Motion for Reconsideration and in the Alternative, Clarification of Limited Portions of Opinion," and correcting the opinion as follows:

Changing "26 U.S.C. section 414(h)" to "4 U.S.C. section 111"

[Editor's Note: Correction incorporated for purposes of publication.]

IT IS FURTHER ORDERED granting appellants' attorneys' fees pursuant to A.R.S. section 12-348 in the amount of $20,000, plus costs.

IT IS FURTHER ORDERED denying attorneys' fees pursuant to section 1988 for failure to request such fees in the briefs.

IT IS FURTHER ORDERED, by majority decision with Judge Voss dissenting, that appellees' motion for reconsideration is denied.